| | |
|---|---|
| HAROLD STONE and JOHN WOESTMAN, for themselves and others similarly situated; and UNITED STEEL, PAPER & FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL & SERVICE WORKERS INTERNATIONAL UNION, ALF-CIO-CLC, | No. 17 C 5360 Judge Thomas M. Durkin |
| Plaintiffs, | |
| v. | |
| SIGNODE INDUSTRIAL GROUP, LLC; and ILLINOIS TOOL WORKS INC., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs are a labor union and two former employees of a company that was Defendants' predecessor in interest. Plaintiffs sue to enforce healthcare benefits under a collective bargaining agreement. The parties have cross-moved for summary judgment. R. 28; R. 35. For the following reasons, Plaintiffs' motion is granted and Defendants' motion is denied.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most

favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Background

Plaintiffs Harold Stone and John Woestman worked for Acme Packaging Corporation at its plant in Riverdale, Illinois, before retiring after 46 and 37 years of employment, respectively. R. 38 ¶ 3. Stone and Woestman were members of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC ("the Union"). *Id.* ¶ 4. In 1994, the Union negotiated a collective bargaining agreement with Acme providing for healthcare benefits. After their retirement, Stone and Woestman have continued to receive healthcare benefits pursuant to that agreement. *Id.* ¶¶ 3, 5, 10-11.

Acme went into bankruptcy. As part of the bankruptcy settlement, the Union and Acme reached new collective bargaining agreements in 2001 and again in 2002, which the bankruptcy court approved. After emerging from bankruptcy in 2003, Acme was acquired by defendant Illinois Tool Works. *Id.* ¶ 25. Although Illinois Tool Works closed the Riverdale plant and the collective bargaining agreement expired in 2004, Illinois Tool Works continued to provide benefits under the agreement.

In 2014, Illinois Tool Works spun-off part of its business and transferred its obligations under the relevant collective bargaining agreement (along with other assets and liabilities), to defendant Signode Industrial Group. In 2015, Signode announced that it was terminating the collective bargaining agreement.

There is no dispute that the parties to this case are party to the collective bargaining agreement. There is also no dispute as to the relevant collective bargaining agreement provisions, which are the following:

> Any Pensioner or individual receiving a Surviving Spouse's benefit who shall become covered by the Program established by the Agreement shall not have such coverage terminated or reduced (except as provided in this Program) so long as the individual remains retired from the Company or receives a Surviving Spouse's benefit, notwithstanding the expiration of this Agreement, except as the Company and the Union may agree otherwise.

R. 36-5 at 4 (p. 66, § 6). And further that:

> [This agreement] shall remain in effect until February 29, 2004, thereafter subject to the right of either party on [120] days written notice served on or after November 1, 2003 to terminate the [agreement].

*Id.* at 5 (p. 67, § 7), 10 (p. 7, § II.C(2)).

## Analysis

"Unlike pension benefits under ERISA, insurance benefits, such as the benefits at issue in this case, do not automatically vest." *Cherry v. Auburn Gear, Inc.*, 441 F.3d 476, 481 (7th Cir. 2006). "Employers nonetheless may create vested welfare benefits by contract." *Sullivan v. CUNA Mut. Ins. Soc'y*, 649 F.3d 553, 555 (7th Cir. 2011). Whether a collective bargaining agreement creates vested welfare benefits is

determined "according to ordinary principles of contract law." *CNH Indus. N.V. v. Reese*, 138 S. Ct. 761, 763 (2018); *see also Barnett v. Ameren Corp.*, 436 F.3d 830, 832 (7th Cir. 2006) ("[I]f they vest at all, they do so under the terms of a particular contract."). "Therefore, as harsh as it may sound, in the absence of a contractual obligation employers are 'generally free . . . for any reason at any time, to adopt, modify or terminate welfare plans.'" *Barnett*, 436 F.3d at 832 (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995)). However, "[r]ights which accrued or vested under the agreement will, as a general rule, survive termination of the agreement." *Litton Fin. Printing Div. v. N.L.R.B.*, 501 U.S. 190, 207 (1991).

The Supreme Court has held that an agreement can "vest lifetime benefits for retirees" by "provid[ing] in explicit terms that certain benefits continue after the agreement's expiration." *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 937 (2015); *see also Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 607 (7th Cir. 1993) (vesting means "creating rights that will not expire when the contract expires"); *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 633 n.4 (7th Cir. 2004) ("[T]he characterization of a benefit as 'lifetime' can, absent a reservation of rights clause, indicate that the benefit is vested."). Here, the agreement provides that benefits continue "so long as the individual remains retired from the Company or receives a Surviving Spouse's benefit, notwithstanding the expiration of this Agreement." In other words, retired employees are entitled to lifetime benefits even after the agreement expires. This language is sufficient to vest the benefits provided by the agreement, absent language to the contrary, such as a reservation of rights clause.

Defendants argue that the agreement contains language limiting the lifetime benefits provided in section 6. Defendants point out that section 6 is conditioned by the phrase "except as the Company and the Union may agree otherwise." Defendants argue that this exception works to incorporate section 7 which permits unilateral termination of the agreement. Despite section 7's provision for termination of the "agreement," Defendants repeatedly assert that section 7 provides for termination of "coverage" or "benefits." *See* R. 30 at 1 ("The agreement here says nothing about vesting. Instead it establishes 'the right of either party . . . to terminate' health-insurance *benefits*.") (emphasis added); *id.* at 7 ("The termination provision then reiterates the default setting—coverage will continue until expiration 'and thereafter'—but then specifies when *coverage* may be ended.") (emphasis added). But section 7 does not mention termination of benefits, only termination the agreement. And the Supreme Court has held that benefits that vest during the term of an agreement, "as a general rule, survive termination of the agreement." *Litton*, 501 U.S. at 207. Defendants do not identify any other "agreement" by the parties to terminate benefits that could serve as an "exception" to the lifetime benefits provided by section 6.

Defendants contend, however, that the Seventh Circuit has held that termination provisions like section 7 serve to limit "lifetime" benefits to the term of the agreement. *See Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 565 (7th Cir. 1995) ("If a contract provides that benefits can be terminated, then those benefits do not vest."); *Vallone*, 375 F.3d at 633 (7th Cir. 2004) ("The problem for the plaintiffs is

that 'lifetime' may be construed as 'good for life unless revoked or modified.'"). But contrary to Defendants' argument, the provisions at issue in those cases are different from the termination provision at issue here. The provisions in the Seventh Circuit cases Defendants cite expressly limited the duration of *benefits* to the duration of the *agreement*. *See Cherry*, 441 F.3d at 479 (7th Cir. 2006) ("The Company will maintain [*benefits*] during the period of this agreement[.]"); *Barnett*, 436 F.3d at 832 ("[T]he company would 'take such action as may be necessary to modify and to continue for the life of the Labor Agreement' health-care *benefits* 'for active employees who retire on or after July 1, 1994.'"); *Vallone*, 375 F.3d at 636 ("The *coverages* described in this Guide may be amended, revoked or suspended at the Company's discretion at any time, even after your retirement. No management representative has the authority to change, alter or amend these coverages."); *Int'l Union of United Auto., Aerospace & Agric. Implement Workers of Am. v. Rockford Powertrain, Inc.*, 350 F.3d 698, 703 (7th Cir. 2003) ("The lifetime benefits clause was followed by the plan termination clause: '[i]n the event this group plan is terminated, [health insurance] *coverage* for you and your dependents will end immediately.'"); *Murphy*, 61 F.3d at 566 ("The Plan states that retiree benefits terminate 'upon the date the Plan is terminated or amended to terminate the Retiree's [or his dependent's] *coverage*.'"); *Ryan v. Chromalloy Am. Corp.*, 877 F.2d 598, 601 (7th Cir. 1989) ("The *coverage* of any covered person under the plan shall terminate on . . . the date of termination of the Plan[.]"); *see also Grove v. Johnson Controls, Inc.*, 694 Fed. App'x 864, 869 (3d Cir. 2017) ("amend or terminate the *benefits* program or any portion of it at any time").

By contrast, the agreement here provides for lifetime benefits, *see* R. 36-5 at 4 (p. 66, § 6) (employees "shall not have such coverage terminated or reduced . . . notwithstanding the expiration of this Agreement"); and separately provides for a date the agreement expires and the ability to unilaterally terminate the agreement, *id.* at 5 (p. 67, § 7), 10 (p. 7, § II.C(2)) ("the right of either party . . . to terminate the [agreement]"). The agreement does not provide for the right to terminate the benefits. The provision of lifetime benefits without provision for their termination constitutes vested benefits.

Defendants argue further that the Supreme Court recently held that a "general duration clause" providing for termination of the agreement is incompatible with an agreement providing vested benefits. *See* R. 30 at 1 (citing *Reese*, 138 S. Ct. at 766). But the Supreme Court's holding was premised on the additional fact that the agreement in that case was otherwise "silent" as to vesting. *Id.* ("The 1998 agreement contained a general durational clause that applied to all benefits, unless the agreement specified otherwise. No provision specified that the health care benefits were subject to a different durational clause. The agreement stated that the health benefits plan 'r[an] concurrently' with the collective-bargaining agreement, tying the health care benefits to the duration of the rest of the agreement."). Contrary to Defendants' contention that the agreement in this case is similarly silent as to vesting, the Court has explained that the language in the agreement provides lifetime benefits without reference to the agreement's duration or termination. Thus, the

Supreme Court's decision in *Reese* does not command a decision in Defendants' favor here.

**Conclusion**

For these reasons, Plaintiffs' motion for summary judgment, R. 35, is granted and Defendants' motion for summary judgment, R. 28, is denied.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: March 13, 2019