IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HAROLD STONE and JOHN WOESTMAN, for themselves and others similarly situated, and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO-CLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>SIGNODE INDUSTRIAL GROUP LLC and ILLINOIS TOOL WORKS INC.,<br><br>*Defendants*. | No. 1:17-cv-05360<br><br>Hon. Thomas M. Durkin<br><br>Magistrate Susan E. Cox |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY INJUNCTION AND ORDER PENDING APPEAL

On March 13, 2019, the District Court issued a memorandum opinion and order ("order") granting Plaintiffs' cross-motion for summary judgment and permanent injunction. Doc. 55. The District Court then entered a March 26, 2019 permanent injunction. Doc. 64. Defendants filed their appeal on April 2, 2019. Doc. 66. Pursuant to Federal Rule of Civil Procedure 62(d), Defendants now move the District Court to stay enforcement of the injunction and order pending resolution of Defendants' appeal.

The District Court should grant the instant motion because Defendants have a strong likelihood of succeeding on their appeal. Respectfully, the District Court erred when it concluded that the relevant agreement did not permit termination of Plaintiffs' benefits because the termination clause did not specifically reference those benefits. That ruling ignores both the fact that the agreement only addressed retiree medical benefits, as well as the instruction of the United

States Supreme Court that courts must give effect to so-called "general" durational clauses when assessing vested benefit claims. Compounding this error, the District Court distinguished relevant Seventh Circuit authority on grounds that did not factor into the Seventh Circuit's repeated recognition that "benefits described as 'lifetime' are not really vested when the same contract also reserves the right to revoke them, because the only proper construction of the two seemingly conflicting provisions is that the 'lifetime' benefits are 'good for life unless revoked or modified.'" *Barnett v. Ameren Corp.*, 436 F.3d 830, 833 (7th Cir. 2006) (citing *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 634–35 (7th Cir. 2004)).

Defendants will also show irreparable injury in the form of economic harm—estimated to be $1.3–1.6 million annually—that cannot be recovered should Defendants prevail on appeal, as well as a corresponding lack of substantial harm to Plaintiffs from a stay. The public's interest also supports the issuance of a stay so as to ensure that the agreement actually reached by the parties is enforced. The District Court should therefore grant Defendants' motion and stay the injunction and order pending appeal.

## BACKGROUND

The key document in this vested retiree medical benefits claim is the 2002 Pensioners' and Surviving Spouses' Health Insurance Agreement (the "2002 Agreement"). Doc. 55 at 3. As Plaintiffs concede (Doc. 1, ¶¶ 17-20), its terms are contained in several documents: a 1994 Pensioners' and Surviving Spouses' Health Insurance Agreement (Doc. 36-2); a 1994 Program of Insurance Benefits (which "constitutes a part of the" Agreement) (the "1994 Program") (Doc. 36-3); and a 2002 Settlement Agreement that made changes to the 1994 Agreement and the 1994 Program. *See* Doc. 36-4 (Part Two, addressing Acme Packaging Corporation (Riverdale Plant)).

Of particular importance here, the 2002 Agreement *only* addresses retiree medical benefits. *See, e.g.*, Doc. 36-2 (definitions of "Pensioner," "Surviving Spouse," and "Pensioners' and Surviving Spouses' Health Insurance"); Doc. 36-4 at PageID #:683–84 (2002 Acme Packaging Settlement Agreement at Part Two, Section II.C., detailing the covered individuals). The specific retiree benefits are contained in the 1994 Program, as amended by the 2002 Settlement Agreement. *See, e.g.,* Doc. 36-3 at PageID #:614 (1994 Program); Doc. 36-4 at PageID #:684, 698–99 (outlining 2002 changes).[1]

Despite the foregoing, the District Court rejected Defendants' argument that Section 7 defeated Plaintiffs' claim because this Court held that "section 7 does not mention termination of benefits, only termination of the agreement." Doc. 55 at 5. In so holding, the District Court further distinguished the numerous Seventh Circuit cases Defendants cited because "[t]he provisions in the . . . cases Defendants cite expressly limited the duration of *benefits* to the duration of the *agreement*." *Id*. at 6 (citations omitted) (emphasis in original).

Defendants can show a strong likelihood of success on their Seventh Circuit appeal because the District Court erred in its interpretation of the 2002 Agreement. Since the 2002 Agreement *only* addresses retiree medical benefits, there was no need for Section 7 to mention "benefits" in order for it to be reasonably applied to permit termination of the entire 2002 Agreement and the retiree medical benefits provided therein.

This interpretive error also undermines the District Court's attempt to distinguish the Seventh Circuit and Supreme Court precedents that support Defendants' position. The fact that

---

[1] The Agreement provides that the Program is "established by [the] Agreement" and "constitutes a part of [the] Agreement as though incorporated herein," and the Program applies to retirees and their surviving spouses "in accordance with the provisions of [the] Agreement." Doc. 36-2 at PageID #:604. The Program also contains a reservation of rights clause. Doc. 36-3 at PageID #:615.

3

the termination provision in some cases may have mentioned "benefits" or "coverage(s)" does not mean such language must be present in order to defeat a vesting claim—a point the Supreme Court has recently made in two decisions. *M&G Polymers USA, LLC v. Tackett*, ___ U.S. ___, 135 S. Ct. 926, 936 (2015) (criticizing lower court's refusal to "apply general durational clauses to provisions governing retiree benefits" and further holding that cases "requiring a contract to include a specific durational clause for retiree health benefits to prevent vesting. . . . distort the text of the agreement and conflict with the principle of contract law that the written agreement is presumed to encompass the whole agreement of the parties."); *CNH Indus. N.V. v. Reese*, ___ U.S. ___, 138 S. Ct. 761, 766 (2018) (reversing lower court's failure to apply "general durational clause that applied to all benefits, unless the agreement specified otherwise.").

Because Defendants can show a likelihood of success on their appeal, and because all other factors favor Defendants' position, the District Court should stay its order and injunction.

## **ARGUMENT**

Federal Rule of Civil Procedure 62(d) provides: "While an appeal is pending from an interlocutory order or final judgment that grants . . . an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." FED. R. CIV. P. 62(d).

The decision to stay an injunction pending appeal is evaluated under the following factors: (1) whether the moving party has made a showing of likelihood of success on appeal, (2) whether the moving party has demonstrated a likelihood of irreparable injury absent a stay, (3) whether the stay would substantially harm other parties to the litigation, and (4) where the public interest lies. *Glick v. Koenig*, 766 F.2d 265, 269 (7th Cir. 1985); *In re A&F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014). As with a preliminary injunction motion, a "sliding scale" approach applies; the

4

greater the party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, and vice versa. *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 546–47 (7th Cir. 2007).

## I.     Defendants Can Show a Likelihood of Success on the Merits of Their Appeal

The "likelihood of success" standard requires showing something less than a 50% chance of success. *Abbott Labs. v. Sandoz, Inc.*, 500 F. Supp. 2d 846, 849 (N.D. Ill. 2007). To meet this standard, it is "enough that the [moving party] have a substantial case on the merits." *Thomas v. City of Evanston*, 636 F. Supp. 587, 590 (N.D. Ill. 1986).

Viewed under this standard, Defendants respectfully submit that there is a strong likelihood that the Seventh Circuit will reverse the District Court's interpretation of the 2002 Agreement's termination provision, particularly given the applicable *de novo* standard of review. *ABS Global, Inc. v. Inguran, LLC*, 914 F.3d 1054, 1076 (7th Cir. 2019) (lower court's interpretation of contract is reviewed *de novo*). As detailed below, the District Court's interpretation of Section 7 proceeded from a faulty factual premise regarding the 2002 Agreement.

### A.     Because the 2002 Agreement only addressed retiree medical benefits, the District Court erred in finding that the Section 7 termination provision had to specify "benefits" in order to defeat Plaintiffs' claims

Key to the District Court's contract interpretation analysis was its conclusion that Section 7 of the 2002 Agreement did not control termination of Plaintiffs' alleged vested benefits because Section 7 "does not mention termination of benefits, only termination of the agreement." Doc. 55 at 5. But the 2002 Agreement *only* addresses one subject—a "Program of Insurance Benefits" for retirees and their surviving spouses. *See, e.g.*, Doc. 36-2 at PageID #:604 (1994 Insurance Agreement); Doc 36-3 at PageID #:614 (1994 Program of Insurance Benefits); Doc. 36-4 at PageID #:683–84, 698–700 (2002 amendments to the 1994 Agreement and Program). As

5

discussed *supra*, the Program is "a part of [the] Agreement as though incorporated herein," and the Program applies to retirees and their surviving spouses "in accordance with the provisions of [the] Agreement." Doc. 36-2 at PageID #:604.

Given these undisputed facts, there is no meaningful difference between a provision giving Defendants the right to terminate the entire 2002 Agreement (which is what the 2002 Agreement provides), and a provision giving Defendants the right to terminate the benefits provided by the 2002 Agreement (which is what the Court found was allegedly lacking in this case). Given the sole subject matter of the 2002 Agreement, both provisions must be read as saying exactly the same thing. That is, Defendants' right to terminate the 2002 Agreement inexorably includes the right to terminate the benefits promised by that Agreement. There is nothing else in the 2002 Agreement that could be terminated.

And because the District Court found that Section 7 gave Defendants the "unilateral" right to terminate the 2002 Agreement, Doc. 55 at 5, that conclusion should have resulted in a ruling in Defendants' favor consistent with the numerous Seventh Circuit cases cited by Defendants. *See also* discussion *infra*. The District Court's conclusion that Section 7 includes "the ability to unilaterally terminate" the 2002 Agreement, but "does not provide for the right to terminate the benefits," nullifies Section 7's termination right in violation of established rules of contract interpretation. *Tackett*, 135 S. Ct. at 936.

## B. The Supreme Court has expressly rejected cases holding that a duration clause must specifically reference retiree benefits in order to defeat a vesting claim

The District Court's conclusion that Section 7 had to specifically reference "benefits" in order to defeat Plaintiffs' claim also runs counter to recent Supreme Court cases addressing vested retiree medical benefit claims. *See Tackett*, 135 S. Ct. at 936 and *Reese*, 138 S. Ct. at 766. The District Court held that *Reese* did not support Defendants' position because "the Supreme Court's holding was premised on the additional fact that the agreement in that case was otherwise 'silent' as to vesting." Doc. 55 at 7 (citations omitted). But as Defendants pointed out in their supplemental brief, Doc. 51 at 1–2, the key discussions from *Tackett* and *Reese* address the importance of applying even a durational clause considered "general," consistent with established principles of contract interpretation. Pursuant to *Tackett* and *Reese*, this interpretive principle applies to the resolution of vested benefit claims, regardless of whether the claim turns on an explicit or implied vesting promise. *Id*.

In *Tackett*, the Supreme Court rejected a series of inferences that the Sixth Circuit used to address claims for vested retiree medical benefits. 135 S. Ct. at 935–37. Among the errors the Supreme Court identified in the Sixth Circuit's interpretive approach was its "refus[al] to apply general durational clauses to provisions governing retiree benefits." *Id*. at 936. In that regard, the Supreme Court further noted that the Sixth Circuit's erroneous reasoning "went even further, [by] requiring a contract to include a specific durational clause for retiree health benefits to prevent vesting." *Id*. The Supreme Court expressly rejected this approach, finding such "decisions distort the text of the agreement and conflict with the principle of contract law that the written agreement is presumed to encompass the whole agreement of the parties." *Id*. (citations omitted).

Consistent with *Tackett*, the Supreme Court in *Reese* found that the Sixth Circuit again erred by, *inter alia*, failing to apply a general durational clause. The Supreme Court began its

7

analysis in *Reese* by revisiting its *Tackett* holding, which "'reject[ed] the *Yard-Man* inferences as inconsistent with ordinary principles of contract law.'" *Reese*, 138 S. Ct. at 763 (citations omitted). Notably, the Supreme Court further stated that "[m]ost obviously, the *Yard-Man* inferences erroneously 'refused to apply general durational clauses to provisions governing retiree benefits,'" which "'distort[ed] the text of the agreement and conflict[ed] with the principle of contract law that the written agreement is presumed to encompass the whole agreement of the parties.'" *Id*. (citations omitted).

In criticizing the Sixth Circuit's failure to, *inter alia*, apply the general durational clause in *Reese*, the Supreme Court also observed that "when an agreement does not specify a duration for health care benefits in particular, other courts would simply apply the general duration clause." *Id*. & n.4 (citations omitted). "Shorn of *Yard-Man* inferences," the Supreme Court found resolution of the claim in *Reese* to be "straightforward," because, *inter alia*, the labor contract at issue "contained a general duration clause that applied to all benefits, unless the agreement specified otherwise." *Reese*, 138 S. Ct. at 766.

While it is true that the Supreme Court in *Reese* also relied on other bases to reverse the Sixth Circuit, there can be no dispute that both *Tackett* and *Reese* emphasized the requirement that courts give meaning to durational clauses, even those that might be considered "general." *See* discussion *supra*. *Tackett* and *Reese* also reject the idea that a termination provision must include a specific reference to retiree medical benefits in order to defeat a vesting claim. *Id*. As noted above, these principles apply regardless of whether the contract at issue is silent (as in *Reese*) or contains a provision that allegedly includes a promise of vested benefits (as Plaintiffs claim is the case here). *See* discussion *supra*.

8

Thus, by failing to apply Section 7's termination language to Plaintiffs' vesting claim because it did not expressly reference "benefits," the District Court failed to apply the durational clause principle the Supreme Court emphasized in both *Tackett* and *Reese*. To require that the termination clause include specific mention of the benefits "distort[s] the text of the agreement and conflicts with the principle of contract law that the written agreement is presumed to encompass the whole agreement of the parties." *Tackett*, 135 S. Ct. at 936.

C. **The Seventh Circuit cases cited by Defendants all fully align with *Tackett* and *Reese* and support rejection of Plaintiffs' claim**

In declining to apply Section 7 to Plaintiffs' claim, the District Court also found that the Seventh Circuit cases Defendants cited did not support their argument because "[t]he provisions in the Seventh Circuit cases Defendants cite expressly limited the duration of *benefits* to the duration of the *agreement*." Doc. 55 at 6 (emphasis in original). Even if correct, *but see* discussion *infra*, it is clear following *Tackett* and *Reese* that a termination clause need not specifically reference the alleged vested benefits in order to be given meaning. *See* discussion *supra*. So even if the duration or termination provisions in the cases Defendants cited referenced the benefits at issue, the legal principles applied in those cases still support dismissal of Plaintiffs' claim.

Moreover, there is no indication in any of these Seventh Circuit cases that the outcome actually turned on the inclusion of an express reference to the terms "benefits" or "coverage." Two of the cases included a reference to "benefits." *Cherry v. Auburn Gear, Inc.*, 441 F.3d 478 (7th Cir. 2006); *Barnett v. Ameren Corp.*, 436 F.3d 830 (7th Cir. 2006). But neither holding focused on that term in rejecting the vesting claim.[2] In *Auburn Gear*, the labor contract addressed both

---

[2] The same is true in *Grove v. Johnson Controls, Inc.*, 694 F. App'x 864 (3d Cir. 2017), a case from outside the Seventh Circuit this Court also addressed. Like *Auburn Gear* and *Barnett*, the presence of the word "benefits" did not factor prominently in the Third Circuit's holding that the termination or reservation of rights clauses—some of which did *not* include a reference to

9

active employee benefits and retiree medical benefits. 441 F.3d at 479. And the introductory section promised to provide a list of enumerated benefits "during the period of this Agreement" that did not specifically reference retiree medical benefits. *Id*. Thus, in finding the introductory section defeated the plaintiffs' vested benefit claim, the Seventh Circuit rejected the plaintiffs' argument that the introductory section did not apply to the retiree benefits described elsewhere in the contract, finding the introductory section "act[ed] as an overriding preamble for both active and retired employees." *Id*. at 483. The Seventh Circuit placed no emphasis on the enumerated benefits in the introductory section in reaching its conclusion.

Similarly, in *Barnett*, the Seventh Circuit found the plaintiffs' vesting claim failed because the phrase "for the life of the Labor Agreement" was an "explicit limitation" that "removes any ambiguity as to the [Labor Agreement's use of] the terms 'vested' and 'vesting.'" 436 F.3d at 834. Nothing in the Seventh Circuit's analysis suggests any reference to "benefits"[3] in the termination clause factored into its holding.

The other four cases the District Court addressed referred to "coverage" or "coverages." But, once again, nothing in the Seventh Circuit's analyses suggests any aspect of its holdings turned on the presence of the words "coverage" or "coverages." *Vallone*, 375 F.3d at 636; *Int'l Union, United Auto. Aerospace and Agricultural Implement Workers of Am., UAW v. Rockford*

---

"benefits"—defeated the plaintiffs' vesting claim. *See Grove v. Johnson Controls, Inc.*, 176 F. Supp. 3d 455, 473 & n.4, 478–79 (M.D. Pa. 2016) (Subclasses A and B vesting claims defeated by termination and reservation of rights clauses with no reference to benefits).

[3]    Notably, the language cited by this Court from *Barnett* does not indicate that "health care benefits" was in fact included in the labor contract language, because the Seventh Circuit did not include that phrase in quotations when discussing the termination provision. *Barnett*, 436 F.3d at 832.

*Powertrain, Inc.*, 350 F.3d 698, 702, 703 (7th Cir. 2003); *Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 566 (7th Cir. 1995); *Ryan v. Chromalloy Am. Corp.*, 877 F.2d 598, 601 (7th Cir. 1989). In fact, a general reference to "coverage(s)" could just as easily be viewed as referring to the agreement or plan in its entirety.

Viewing the entire substance of the Seventh Circuit's analyses in these cases supports the conclusion—contrary to the District Court's ruling—that there is no material difference for contract interpretation purposes, especially following *Tackett* and *Reese*, between a termination provision that allows termination of the entire agreement and a provision that permits termination of the coverages provided by that agreement.

Therefore, notwithstanding the textual differences between Section 7 and the termination provisions in the Seventh Circuit cases discussed above, the same legal premise that supported denial of the claims in those cases will support reversal of the District Court's ruling here. Namely, "when 'lifetime' benefits are granted by the same contract that reserves the right to change or terminate the benefits, the 'lifetime' benefits are not vested." *Vallone*, 375 F.3d at 634–35 (citation omitted).

As Defendants previously noted, Doc. 51 at 5, "[t]he reason for such a holding is that benefits described as 'lifetime' are not really vested when the same contract also reserves the right to revoke them, because the only proper construction of the two seemingly conflicting provisions is that the 'lifetime' benefits are 'good for life unless revoked or modified.'" *Barnett*, 436 F.3d 830 at 833. *See also Bland v. Fiatallis N.A. Inc.*, 401 F.3d 779, 786 (7th Cir. 2005) (interpreting "lifetime" language as "good for life unless revoked or modified" was "most plausible," "because the presence of a reservation of rights clause fundamentally alters the interpretation of 'lifetime' language."). None of this reasoning turns on the presence in the termination provision of a specific

11

reference to the alleged vested benefits. These Seventh Circuit cases fully support Defendants' position, especially given the fact that the 2002 Agreement *only* addresses retiree benefits.

Defendants therefore respectfully submit they have demonstrated a strong likelihood of success on the merits sufficient to support a stay pending appeal. *See* cases discussed *supra*. *See also Heitmann v. City of Chicago*, 2008 WL 1943239, at *2 (N.D. Ill. 2008) (conflicting precedent on controlling issue of law supported conclusion that moving party demonstrated likelihood of success on the merits); *A&F Enters. II*, 742 F.3d at 766 (purpose of stay pending appeal is to minimize the costs of error).

## II. Defendants Will Likely Suffer Irreparable Harm Without a Stay of the Injunction

Defendants further submit they are also able to demonstrate irreparable harm sufficient to support a stay. The Seventh Circuit has observed that irreparable harm is that which "cannot be repaired, retrieved, put down again, [or] atoned for." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997) (citations omitted).

Defendants' obligation under the injunction the District Court issued satisfies this prong of the analysis. If the District Court denies Defendants' motion to stay, the injunction requires that Defendants restore the retiree health insurance benefits provided under the 2002 Agreement. Doc. 64. Defendants estimate reinstatement of the 2002 Agreement will cost approximately $1.3 million–$1.6 million per year. *See* Declaration of Patricia Chidiac, attached hereto as Ex. A, ¶ 4. A significant portion of that cost will go towards obtaining coverage, finding and offering re-enrollment to eligible participants, expending costs for plan administration, and paying for the majority of the cost of benefits for those eligible participants who elect to reinstate their coverage. *Id*. ¶ 5.

Because these are not costs directly borne by the individuals who elect to resume coverage, if Defendants should prevail in their appeal, they will have little, if any, recourse to recoup the administrative and other costs of reinstating coverage while this matter is pending appeal. Accordingly, Defendants respectfully submit they have demonstrated that they will likely suffer irreparable harm in the absence of a stay pending appeal. *Ill. Bell Tel. Co. v. Hurley*, 2005 WL 735968, at *7 (N.D. Ill. 2005) (party demonstrated irreparable harm where there was no entity against which monetary damages could be recovered); *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n*, 109 F.3d 418, 426 (8th Cir. 1996) (same); *Cohen v. Minneapolis Jewish Fed'n*, 2018 WL 6191046, at *1 (W.D. Wis. 2018) (moving party demonstrated irreparable harm; absent a stay, if funds in dispute were distributed to third parties, there would be no way for them to be recovered). *See also Grutter v. Bollinger*, 247 F.3d 631, 633 (6th Cir. 2001) (stay pending appeal warranted because, *inter alia*, defendant irreparably harmed because it would have to implement a new administrative scheme, the implications of which could be not reversed if district court's ruling was later reversed).

Particularly in light of Defendants' strong showing regarding their likelihood of success on the merits, *see* discussion *supra*, Defendants submit these harms more than satisfy their burden under the relevant factors. *A&F Enters. II*, 742 F.3d at 766 (under "sliding scale" approach, "the greater the moving party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor").

### III. A Stay of the Injunction Will Not Substantially Harm Plaintiffs

By contrast, Plaintiffs will not experience substantial harm with the issuance of a stay of the injunction. Should the Seventh Circuit affirm the District Court, Defendants could then reinstate the benefits and pay damages for any costs incurred by Plaintiffs from the date of the

injunction through the date of the Court of Appeals' decision.  Thus, any possible harm could be remedied by monetary damages.  *Solis v. Tenn. Commerce Bancorp, Inc.*, 2010 WL 1187001 (6th Cir. 2010) (balancing of harms supported stay pending appeal; injunction would cause disruption to the defendants' operation and personnel "that cannot be undone," while the plaintiff could be made whole by award of compensatory damages, back pay and interest).  And, if the Seventh Circuit reverses the District Court and vacates the injunction, as Defendants submit is likely to happen, *see supra*, then Plaintiffs will have incurred no harm whatsoever as they will not have been entitled to the benefits in the first place.

Because the record is devoid of any substantial harm to be borne by Plaintiffs should the injunction be stayed, Defendants respectfully submit that this factor also supports the issuance of a stay of the injunction.  *Id*.

## IV. The Public's Interest Lies in Enforcing the 2002 Agreement

Finally, Defendants respectfully submit that the public's interest lies in enforcing the agreement actually reached by the parties in this case.  As demonstrated above, the District Court's order and injunction erroneously required Defendants to reinstate coverage, contrary to the terms of the 2002 Agreement.  *See* discussion *supra*.  Requiring Defendants to restore benefits that they lawfully terminated serves no public interest.  *See, e.g.*, *Bucciarelli-Tieger v. Victory Records, Inc.*, 2007 WL 1498910, at *4 (N.D. Ill. May 17, 2007) (granting preliminary injunction to party arguing that contract did not contain particular provision and agreeing that while "there is a public interest in enforcing valid contracts," "this interest also seeks to enforce a contract by its terms, and here, those terms do not include an exclusivity provision."); *FreemantleMedia-Ltd. v. Colmar, Ltd.*, 2001 WL 1360432, at *2 (N.D. Ill. Nov. 5, 2001) (granting preliminary injunction and finding that

the moving parties had "the public interest firmly in their favor" because "the public has no interest in enforcing agreements that do not exist.").

## **CONCLUSION**

For all these reasons, the District Court should grant Defendants' motion to stay injunction and enter an order staying its order (Doc. 55) and injunction (Doc. 64) requiring Defendants to reinstate coverage under the 2002 Agreement.

Dated: May 3, 2019

        Respectfully submitted,

        SIGNODE INDUSTRIAL GROUP LLC and
        ILLINOIS TOOL WORKS INC.


        By: /s/ Joseph J. Torres
              One of their Attorneys

Joseph J. Torres
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
jtorres@winston.com

# **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 3, 2019 he caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Northern District of Illinois of the United States District Court using the CM/ECF system and thereby served upon:

>John G. Adam
>Legghio & Israel, P.C.
>306 South Washington, Suite 600
>Royal Oak, Michigan 48067
>jga@legghioisrael.com
>
>Stephen A. Yokich
>Dowd, Bloch, Bennett, Cervone,
> Auerbach & Yokich
>8 S. Michigan Ave., 19th Floor
>Chicago, Illinois 60603
>syokich@laboradvocates.com

>/s/   Joseph J. Torres
>      Joseph J. Torres