UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HAROLD STONE and JOHN WOESTMAN,
for themselves and others similarly-situated, and
UNITED STEEL, PAPER AND FORESTRY,
RUBBER, MANUFACTURING, ENERGY,
ALLIED INDUSTRIAL AND SERVICE                    Case No. 17-cv-5360
WORKERS INTERNATIONAL                            Class Action
UNION, AFL-CIO-CLC,
                                                 U.S. District Judge
      Plaintiffs,                              Thomas M. Durkin

v.

SIGNODE INDUSTRIAL GROUP LLC and
ILLINOIS TOOL WORKS INC., jointly and severally,

      Defendants.
_____/

**RETIREES' OPPOSITION TO MOTION (R. 71) TO STAY THIS COURT'S MARCH 26, 2019 INJUNCTION ORDERING DEFENDANTS TO RESTORE *STATUS QUO ANTE* RETIREE HEALTHCARE (R. 64)**

Stuart M. Israel
John G. Adam
Legghio & Israel, P.C.
306 South Washington, Suite 600
Royal Oak, MI 48067
(248) 398-5900
jga@legghioisrael.com

Stephen A. Yokich (IL 6181707)
Dowd, Bloch, Bennett, Cervone,
    Auerbach & Yokich
8 S. Michigan Ave., 19th Floor
Chicago, IL 60603
(312) 372-1361
syokich@laboradvocates.com

Attorneys for Plaintiffs

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PARTIES AND ABBREVIATIONS ........................................................................... iv

ARGUMENT ........................................................................................................... 1

    I.    STAYING A PERMANENT INJUNCTION PENDING APPEAL IS "EXTRAORDINARY" ...................................................................................... 1

    II.    THIS COURT CORRECTLY HELD THAT THE CBA PROMISES— THAT HEALTHCARE (1) CONTINUES "NOTWITHSTANDING" CBA "EXPIRATION" AND (2) "SHALL NOT" BE "TERMINATED OR REDUCED" WHILE A RETIREE OR SURVIVING SPOUSE RECEIVES PENSION—VEST HEALTHCARE ................................................. 1

        A.    The CBA Terms Vest Retiree Healthcare .................................................. 2

        B.    Federal Precedent Proves Vested Retiree Healthcare ................................ 3

        C.    Company Practice Proves Vested Retiree Healthcare ............................... 4

    III.    A STAY WOULD SERIOUSLY HARM RETIREES ........................................... 6

    IV.    THE PUBLIC INTEREST FAVORS ENFORCEMENT OF HEALTHCARE PROMISES AND RETIREES' ERISA RIGHTS ...................... 8

    V.    THE COMPANY HAS "UNCLEAN HANDS" ................................................... 8

CONCLUSION ......................................................................................................... 10

# TABLE OF AUTHORITIES

## CASES

*ABF Freight System v. NLRB*, 510 U.S. 317 (1994) ....................................................... 8

*Arthur v. Allen*, 574 F.Supp.2d 1252 (S.D. Ala. 2008) ................................................. 9

*Bidlack v. Wheelabrator Corp.*, 993 F.2d 603 (7th Cir. 1993) (*en banc*) ...................... 4

*Bland v. Fiatallis*, 401 F.3d 779 (7th Cir. 2005) ......................................................... 3

*Blum v. Caldwell*, 446 U.S. 1311 (1980) .................................................................... 7

*Bombard v. Fort Wayne Newspapers*, 92 F.3d 560 (7th Cir. 1996) ............................... 2

*Bower v. Bunker Hill*, 725 F.2d 1221 (9th Cir. 1984) ................................................. 5

*Cherry v. Auburn Gear*, 441 F.3d 476 (7th Cir. 2006) ................................................. 2

*City of Pontiac Retired Employees Ass'n. v. Schimmel*, 751 F.3d 427 (6th Cir. 2014) (*en banc*) ............................................................................................................. 6

*CNH Industrial v. Reese*, 138 S.Ct. 761 (2018) ..................................................... 2, 3

*Crown Cork v. IAM*, 501 F.3d 912 (8th Cir. 2007) ...................................................... 2

*Deutsche Bank v. Cornish*, 759 Fed.Appx. 503 (7th Cir. 2019) .................................... 1

*Golden v. Kelsey-Hayes Co.*, 73 F.3d 648 (6th Cir. 1996) ............................................ 6

*Grove v. Johnson Controls*, 694 Fed.Appx. 864 (3rd Cir. 2017) .................................. 2

*Hilton v. Braunskill*, 481 U.S. 770 (1987) ................................................................. 1

*HR Staffing v. Butts*, 2015 WL 3561618 (D.N.J.) ....................................................... 6

*Iron Workers v. SR Industries Corp.*, 940 F.2d 665 (7th Cir. 1991) ............................. 4

*Keffer v. H.K. Porter Co.*, 872 F.2d 60 (4th Cir. 1989) ................................................ 4

*LaForest v. Honeywell,* 2003 WL 23180220 (W.D.N.Y.) .............................................. 6

*M&G Polymers v. Tackett*, 135 S.Ct. 926 (2015) .................................................... 2, 3

*Murphy v. Keystone Steel*, 61 F.3d 560 (7th Cir. 1995) ................................................ 3

*North American Airlines, Inc. v. IBT*, 2005 WL 926969 (S.D.N.Y.) ............................. 3

*Rossetto v. Pabst Brewing Co.*, 217 F.3d 539 (7th Cir. 2000), *cert. den.* 531 U.S. 1192 (2001)................................................................................................................ 3, 4

*Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315 (1983) ................................................... 1

*Silverstein v. Penguin Putnam, Inc.*, 2003 WL 21361734 (S.D.N.Y.) ............................. 1, 3, 5, 7

*Steelworkers v. Textron, Inc.*, 836 F.2d 6 (1st Cir. 1987)............................................ 6

*Teamsters Local 120 v. Marathon*, 2006 WL 2971667 (D. Minn.)................................. 8

*UFCW v. Dubuque Packing Co.*, 756 F.2d 66 (8th Cir. 1985)....................................... 5

*USWA v. Connors Steel Co.*, 855 F.2d 1499 (11th Cir. 1988), *cert. den.* 489 U.S. 1096 (1989)................................................................................................................ 4, 5

*Vallone v. CNA Financial*, 375 F.3d 623 (7th Cir. 2004)............................................ 2

*Webb v. GAF*, 1995 WL 118178 (N.D.N.Y.) .............................................................. 6

*Wilson v. Gordon*, 822 F.3d 934 (6th Cir. 2016) ...................................................... 6

*Zielinski v. Pabst Brewing Co.*, 463 F.3d 615 (7th Cir. 2006)...................................... 4

**STATUTE**

Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1001, *et seq.* .................... 8, 10

**RULE**

Federal Rule of Evidence 801(d)(2) ......................................................................... 5

## PARTIES AND ABBREVIATIONS

Plaintiffs are retirees from the Riverdale, Illinois plant and class representatives **(1)** Harold Stone and **(2)** John Woestman, and their former union, **(3)** United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Industrial Union, AFL-CIO-CLC ("**USW**"), collectively the "**retirees**."

Defendants are **(1)** Signode Industrial Group LLC ("**Signode**") and **(2)** Illinois Tool Works Inc. ("**ITW**"), successors to Acme Packaging Corporation ("**Acme**"), collectively the "**company**."

We refer to the governing collective bargaining agreement—the 2002 Pensioners' and Surviving Spouses' Health Insurance Agreement (R. 36-5)—as the "**Pensioners' CBA**."

The Pensioners' CBA promises healthcare for **(1)** the "184 pensioners" who retired from Riverdale before November 1, 2001, under earlier expired Pensioners' CBAs, "and their surviving spouses (and their eligible dependents)" and **(2)** Riverdale employees who retired on or after November 1, 2001 under later Pensioners' CBAs, and their families. (R. 36-5 at A102-103).

The Pensioners' CBA promises family healthcare **(1)** to each pensioner "so long as" he or she "remains retired" and **(2)** to each pensioner's surviving spouse "so long as" he or she "receives" pension. (R. 36-5 at A72, ¶6).

We cite the declaration of former Acme and ITW benefits administrator and Riverdale human resources manager Anthony Kuchta (R. 36-17) as "**Kuchta ¶__**."

iv

**ARGUMENT**

**I.    STAYING   A   PERMANENT   INJUNCTION   PENDING   APPEAL   IS "EXTRAORDINARY"**

A stay of a permanent injunction should be granted only under "extraordinary circumstances." *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1316 (1983) (citation omitted).

Courts consider four equitable factors: **(1)** whether defendant makes a "strong showing that he is likely to succeed on the merits"; **(2)** whether defendant "will be irreparably injured absent a stay"; **(3)** whether a "stay will substantially injure" plaintiffs; and **(4)** "where the public interest lies." *Deutsche Bank v. Cornish*, 759 Fed.Appx. 503, 506 (7th Cir. 2019), quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The failure to satisfy any factor may defeat a stay. *Ruckelshaus*, 463 U.S. at 1316-17 (likelihood of appellate success need not be considered "if the applicant fails to show irreparable injury from denial of the stay").

We show ahead that the company cannot meet its "extraordinary" burden.

**II.    THIS COURT CORRECTLY HELD THAT THE CBA PROMISES—THAT HEALTHCARE (1) CONTINUES "NOTWITHSTANDING" CBA "EXPIRATION" AND (2) "SHALL NOT" BE "TERMINATED OR REDUCED" WHILE A RETIREE OR SURVIVING SPOUSE RECEIVES PENSION—VEST HEALTHCARE**

The Court's well-grounded permanent injunction should not be stayed merely because the company is "displeased." *Silverstein v. Penguin Putnam, Inc.*, 2003 WL 21361734 at *1 (S.D.N.Y.) (denying stay of a permanent injunction "entered after cross motions for summary judgment" where the "defendant is simply displeased with the result").

We first show that this Court correctly held that the Pensioners' CBA promises vested lifetime healthcare. (**Section A**). We then show alternative grounds supporting the Court: federal precedent and industry practice (**Section B**) and decades of Riverdale plant performance and practice (**Section C**). See *Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 562 (7th Cir.

1996) (the Seventh Circuit may affirm on a "ground other than that relied upon by the district court" if the "alternative basis finds adequate support in the record"). In short, the company is not "likely to succeed on the merits."

### A. The CBA Terms Vest Retiree Healthcare

Vesting can be proved with "explicit terms, implied terms, or industry practice" showing that retiree healthcare is to "continue after the agreement's expiration." *CNH Industrial v. Reese*, 138 S.Ct. 761, 765 (2018) and *M&G Polymers v. Tackett*, 135 S.Ct. 926, 937 (2015).

This Court correctly held that 2002 Pensioners' CBA ¶6 vests retiree healthcare, citing explicit durational promises. <u>First</u>, the healthcare continues "notwithstanding the expiration of this Agreement." <u>Second</u>, the healthcare "shall not" be "terminated or reduced" while a retiree "remains retired" or a retiree's surviving spouse gets pension, *i.e.*, for life. (R. 55 at 4-8).

During the summary judgment and injunction proceedings, the company unavailingly relied on cases that apply CBA terms which bar vesting—*CBA terms not present here*. This Court found (R. 55 at 6, italics in original):

> contrary to Defendants' argument, the provisions at issue in those cases are different from the termination provision at issue here. The provisions in the Seventh Circuit cases Defendants cite expressly limited the duration of *benefits* to the duration of the *agreement*.

The company still mistakenly relies on **(1)** *Grove v. Johnson Controls*, 694 Fed.Appx. 864, 870 (3rd Cir. 2017) (reservation of rights ("ROR") clause allowed the company to end retiree healthcare and "extrinsic evidence" proved "vesting was not intended"); **(2)** *Vallone v. CNA Financial*, 375 F.3d 623, 633 (7th Cir. 2004) (ROR clause allowed company to end retiree healthcare); **(3)** *Crown Cork v. IAM*, 501 F.3d 912, 917 (8th Cir. 2007) (ROR clause allowed company to limit retiree healthcare to the "life of" the CBA); **(4)** *Cherry v. Auburn Gear*, 441 F.3d 476, 482 (7th Cir. 2006) (italics in original) (CBA explicitly promised retiree healthcare

only "*during the period of this agreement*"); and **(5)** *Murphy v. Keystone Steel*, 61 F.3d 560, 565-566 (7th Cir. 1995) (CBA specified that retiree healthcare "will remain in effect" only "during the term of this agreement"). *Cf. Bland v. Fiatallis*, 401 F.3d 779, 786, 787 (7th Cir. 2005) ("lifetime" term in healthcare plan "defeats" company's summary judgment motion, noting the plan had no ROR clause).

The company now repeats its rejected arguments and inapposite citations, and fails to show likely appellate success. See, *e.g.*, *Silverstein*, 2003 WL 21361734 at *1 (stay motion denied where defendant "repeats" the "failed" arguments it "made in its summary judgment motion") and *North American Airlines, Inc. v. IBT*, 2005 WL 926969 (S.D.N.Y.) (stay denied because "repetition of arguments previously considered and rejected cannot" show likely appellate success).

We next summarize alternative grounds for the Seventh Circuit to affirm—discussed in the retirees' briefs (R. 36, PgID##593-596; R. 43, PgID##896-899; and R. 50, PgID##929-932)—grounds still ignored by the company.

### B.     Federal Precedent Proves Vested Retiree Healthcare

Industry practice can prove vesting. See **(1)** *Reese*, 138 S.Ct. at 765 (retiree healthcare vesting may be shown by "industry practice"); **(2)** *Tackett*, 135 S.Ct. at 935 ("known customs or usages in a particular industry" shown by "affirmative evidentiary support in a given case" may prove retiree healthcare vesting); and **(3)** *Rossetto v. Pabst Brewing Co*., 217 F.3d 539, 546 (7th Cir. 2000), *cert. denied* 531 U.S. 1192 (2001) (brewing industry practice proved there was latent ambiguity regarding retiree healthcare vesting in seemingly-unambiguous CBA).

Here, industry practice is definitively proved by federal precedent, holding that the language used in the Pensioners' CBA is "basic steel" industry template language promising vested lifetime retiree healthcare. The definitive cases are *USWA v. Connors Steel Co*., 855 F.2d

1499, 1504, 1508 (11th Cir. 1988), *cert. denied* 489 U.S. 1096 (1989) and *Keffer v. H.K. Porter Co.*, 872 F.2d 60, 62-64 (4th Cir. 1989).

*Connors Steel* and *H.K. Porter* enforced "basic steel" industry CBA terms identical to those governing the Riverdale retirees. The Fourth and Eleventh Circuits held that these CBA terms unambiguously vest healthcare. The Seventh Circuit—in *Iron Workers v. SR Industries Corp.*, 940 F.2d 665 at *4 (1991) (emphasis added)—cites *Connors Steel* and *H.K. Porter* as enforcing CBAs that "*specifically* provided that the employer was *obligated* to continue making benefit contributions *after* the agreement expired."

Here, the company knowingly adopted the "basic steel" retiree healthcare vesting language in the Pensioners' CBA, as proved by company manager and negotiator Anthony Kuchta's testimony. (Kuchta ¶¶3, 5-10).

### C.     Company Practice Proves Vested Retiree Healthcare

Even if—disregarding this Court's ruling, federal precedent, and industry practice—we were to assume that the CBA terms are somehow unclear, the "extrinsic" evidence proves vesting. See **(1)** *Zielinski v. Pabst Brewing Co.*, 463 F.3d 615, 618 (7th Cir. 2006) (finding vested retiree healthcare; how the parties "actually perform" is "persuasive evidence of what the parties understood the contract to require"); **(2)** *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 609 (7th Cir. 1993) (*en banc*) (retirees are entitled to "present testimony and documents" to resolve ambiguity about healthcare vesting); and **(3)** *Rossetto*, 217 F.3d at 547 (retirees are entitled to present extrinsic evidence to show and resolve "a patent or a latent ambiguity" about healthcare vesting).

Here, the *undisputed* evidence—of company admissions, performance, and practice—definitively proves vested lifetime healthcare.

4

**First**, company manager and negotiator Anthony Kuchta presented unrebutted testimony that for decades before the Riverdale plant closed in 2004, the company provided *lifetime* retiree healthcare accompanying *lifetime* pension. Kuchta also testified that the company assured retiring Riverdale employees (in FRE 801(d)(2) admissions) that they and their surviving spouses were entitled to *lifetime* retiree healthcare. (Kuchta ¶¶4-14, 16).

**Second**, in 2004, before the plant closed, company official Kuchta, in an emailed FRE 801(d)(2) admission to USW, wrote that under Pensioners' CBA ¶6 employees already retired, and those who would retire before the last Pensioners' CBA expired, were entitled to—and "earned"—"retiree coverage" which "shall not terminate." (Kuchta ¶¶6-13).

**Third**, the company kept its retiree healthcare promises for more than a decade *after* it closed the Riverdale plant in 2004—until 2016. This, too, proves vesting. See *e.g.*, **(1)** *Connors Steel*, 855 F.2d at 1502 (continued retiree healthcare *after* plant closing and last CBA expiration proves vesting); **(2)** *UFCW v. Dubuque Packing Co.*, 756 F.2d 66, 70 (8th Cir. 1985) (continued retiree healthcare *after* plant closing and last CBA expiration proves the parties "implicitly intended to provide lifetime benefits"); and **(3)** *Bower v. Bunker Hill*, 725 F.2d 1221, 1225 (9th Cir. 1984) (citations omitted; continued retiree healthcare *after* CBA expiration is an "objective manifestation" of the employer's lifetime family healthcare obligation to retirees).

————————————

**In sum**, to quote *Silverstein*, this "Court did not misapprehend the law or the facts" when it directed the company to restore the *status quo ante* retiree healthcare. The Seventh Circuit assuredly will affirm because by every pertinent measure—the explicit CBA terms, federal precedent and steel industry practice, and decades of company admissions and performance—the 2002 Pensioners' CBA promises lifetime healthcare for Riverdale retirees.

## III.    A STAY WOULD SERIOUSLY HARM RETIREES

Retirees wrongfully deprived of healthcare suffer devastating harm which cannot be adequately rectified by money damages.  See, *e.g.*, *Steelworkers v. Textron, Inc.*, 836 F.2d 6, 8 (1st Cir. 1987) (the loss of healthcare causes irreparable harm to "retired workers" who "would likely suffer emotional distress, concern about potential financial disaster, and possibly deprivation of life's necessities") and *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 657 (6th Cir. 1996) ("retirees, primarily because of their fixed incomes, are unable to absorb even relatively small increases in their expenses without extreme hardship").

Courts routinely uphold *preliminary* injunctions based on the devastating and irreparable harm caused by "delay in or inability to obtain medical services"—and do so even if "the party against whom the injunction is issued claims that the injunction places significant costs on them."  *Wilson v. Gordon*, 822 F.3d 934, 958 (6th Cir. 2016).  See *Pontiac Retired Employees Ass'n. v. Schimmel*, 751 F.3d 427, 432 (6th Cir. 2014) (*en banc*) (reversing preliminary injunction *denial* because the "district court failed to consider that a reduction in health care benefits can cause irreparable harm" to retirees) and *Webb v. GAF*, 1995 WL 118178 at *1 (N.D.N.Y.) (denying stay of preliminary injunction restoring collectively-bargained retiree healthcare).

See also *HR Staffing v. Butts*, 2015 WL 3561618 at *2 (D.N.J.) (denying stay; a stay of a preliminary injunction is "extraordinary relief" and the "bar is particularly high" where defendants are "asking the court to negate" the preliminary injunction just granted).

As observed in *LaForest v. Honeywell*, 2003 WL 23180220 at *2 (W.D.N.Y.) (quoting *Textron*, citation omitted):

> Justice Breyer, when a member of the First Circuit Court of Appeals succinctly pointed out that certain general facts are commonly believed or have been held to constitute irreparable harm concerning retirees and

reductions in medical benefits, such as: "(1) most retired union members are not rich; (2) most live on fixed incomes; (3) many will get sick and need medical care; (4) medical care is expensive; (5) medical insurance, is therefore, a necessity; (6) some retired workers find it difficult on their own while others pay for it only out of money that they need for other necessities of life...." It is easy to understand that emotional distress is likely to follow termination of retiree medical insurance benefits.

These authorities bar retiree healthcare termination in *preliminary* injunctions. Here, the Court issued a *permanent* injunction—after cross summary judgment motions, fully briefed, and argued. A stay of a fully-litigated permanent injunction is particularly improper. See *Silverstein*, 2003 WL 21361734 at *1 (denying stay of a fully-litigated permanent injunction).

The company does not and cannot deny the harm it has done—and is doing—to Riverdale retirees. Rather, the company asks the Court to act on company financial self-interest.

The company asserts that meeting its obligations will cost about $1.3 to $1.5 million a year. Another way of expressing the same point is that the company's failure to meet its healthcare obligations will cost *the retirees* at least $1.3-$1.5 million a year. The company is obligated to keep its promises and is in a far better financial position than the retirees.

For perspective, consider the two defendants: "ITW had $14.8 billion in revenue in 2018" from "operations in 55 countries that employ more than 48,000 women and men." www.itw.com/about-itw. Signode is a "$2.4 billion global company" with "7,000 employees" and "88 manufacturing facilities across six continents," making products "sold around the world in developed and emerging markets under well-known and trusted brand names, including: Acme Packaging." www.signodegroup.com/about-us.

The company is readily able—and obligated—to pay the cost of promised retiree healthcare. See, *e.g.*, *Blum v. Caldwell*, 446 U.S. 1311, 1315–1316 (1980) (that defendant will "expend an additional $150 million per year in Medicaid benefits" does not justify a stay;

company cost does not outweigh the harm to the "life and health" of "persons who are aged, blind, or disabled and unable to provide for necessary medical care because of lack of resources").

Here, the company *already* avoided spending more than $5 million in 2016, 2017, 2018 and 2019 because it unilaterally cancelled promised retiree healthcare. The company is not entitled to prolong the harm to retirees now that this Court has ordered the company to reinstate the promised healthcare.

## IV.  THE PUBLIC INTEREST FAVORS ENFORCEMENT OF HEALTHCARE PROMISES AND RETIREES' ERISA RIGHTS

ERISA's objective is to "protect" the "participants in employee benefit plans and their beneficiaries." 29 U.S.C. §1001(b). This public interest favors this Court's rigorous enforcement of the CBA-promised ERISA-regulated healthcare, earned by each Riverdale retiree with 30-plus years of industrial labor. "There is a strong public interest in preventing employers from discontinuing workers' health insurance coverage in violation of ERISA." *Teamsters Local 120 v. Marathon*, 2006 WL 2971667 at *6 (D. Minn.).

## V.  THE COMPANY HAS "UNCLEAN HANDS"

The "unclean hands" doctrine "closes the door" to a party "tainted with inequitableness or bad faith relative to the matter." *ABF Freight System v. NLRB*, 510 U.S. 317, 329–330 (1994). Here, the stay request is tainted by the company's "unclean hands." The company has not, as ordered, "as soon as reasonably practicable," restore the *status quo ante*, *i.e.*, the "healthcare benefits that were in effect before January 1, 2016." (R. 64).

In response to the retirees' earlier enforcement motion (R. 73-74)—and the Court's pointed encouragement at the May 8 hearing—the company now proffers a "reinstatement timetable." But the "timetable" will delay retiree healthcare reinstatement for six months or

more—while the company engages in "data collection," "materials preparation," "data entry & system testing," and other amorphous paper-shuffling. In addition, the company plans to unilaterally change the plan administrator, the benefits, and the retiree contributions—disregarding the *status quo ante*. (Ex. A).

The *status quo ante* retiree healthcare is well known—to the company, which provided the self-insured healthcare, and by Blue Cross Blue Shield of Illinois ("BCBSI"), which administered the healthcare for decades, before the company unilaterally ended it. (R. 36-12).

All the pertinent data is known: the retirees' names, birthdates, social security numbers, marital statuses, their health benefits, and their monthly contributions. Until the company "pulled the plug," BCBSI provided a network of doctors, calculated costs and contributions, and administered the healthcare benefits plan self-funded by the company. BCBSI annually calculated retiree co-funding based on family status (*e.g.*, single pensioner, single pensioner and spouse, Medicare-covered and non-Medicare covered).

BCBSI could have promptly restored the healthcare as required by the injunction—*if* the company had asked BCBSI to do so. But the company has *not* contacted BCBSI.

Moreover, the company did not seek a stay until 38 days after the injunction, after the stipulated order preserving the retiree's right to enforce the injunction. (R. 64-65). This, too, demonstrates "unclean hands." See *Arthur v. Allen*, 574 F.Supp.2d 1252, 1256 (S.D. Ala. 2008) (the "timing" of the motion suggests an "ambush, an exercise in eleventh-hour gamesmanship" and such "conduct is the very antithesis of equitable, diligent, good faith, vigilant conduct required of a litigant seeking equitable relief").

The company still is disregarding the injunction *and* the retirees' well-being. The company lacks the "clean hands" requisite to a stay request.

**CONCLUSION**

By every pertinent measure—the explicit CBA terms, federal precedent and industry practice and decades of company admissions and performance—the 2002 Pensioners' CBA promises lifetime family healthcare for Riverdale retirees.

By every pertinent measure, a stay is *not* justified. This Court's fully-litigated ruling was correct. The retirees will continue to be seriously harmed if the promised healthcare is further delayed. The public interest is served by enforcing the injunction and the retirees' contract and ERISA rights. The company cannot meet its "extraordinary" burden to justify staying the Court's permanent injunction.

The stay motion should be denied, and the company should be directed to promptly comply with its Court-ordered obligations.


Stephen A. Yokich (IL 6181707)
Dowd, Bloch, Bennett, Cervone,
    Auerbach & Yokich
8 S. Michigan Ave., 19th Floor
Chicago, IL 60603
(312) 372-1361
syokich@laboradvocates.com


May 23, 2019

s/John G. Adam
Stuart M. Israel (MI P15359)
John G. Adam (MI P37205)
Legghio & Israel, P.C.
306 South Washington, Suite 600
Royal Oak, MI 48067
(248) 398-5900
israel@legghioisrael.com
jga@legghioisrael.com


Attorneys for Plaintiffs

10

## CERTIFICATE OF SERVICE

I certify that on May 23, 2019, I caused the foregoing paper to be electronically filed with the Clerk of the Court using the ECF system which will send notification of filing to all participating in the CM/ECF system.

s/John G. Adam
John G. Adam