IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HAROLD STONE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-05360 |
| | ) | |
| SIGNODE INDUSTRIAL GROUP LLC, et al., | ) | Hon. John Kness |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL**

Plaintiffs' Motion to Compel (Dkt. 149, "Motion" or "Mot.") should be denied because it seeks discovery related to equitable remedies that Plaintiffs clearly are not entitled to under ERISA. Plaintiffs' Motion should also be denied because it seeks discovery related to injunction compliance despite this Court's directives that Plaintiffs should first set forth *in a motion* any additional relief related to injunction compliance to which Plaintiffs contend they are entitled.

**Background**

**I.     The Parties.**

The individual Plaintiffs are retirees of the Acme Packaging Corporation ("Acme") plant in Riverdale, Illinois. *Stone, et al. v. Signode Indus. Grp. LLC*, 943 F. 3d 381, 383 (7th Cir. 2019). While working, Plaintiffs were represented by Plaintiff United Steel Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, ALF-CIO-CLC (the "Union"). *Id.* The Union previously negotiated a 1994 labor contract that addressed retiree medical benefits. *Id.* That agreement contained a cost-sharing provision, under which Acme would assume "90% of the actuarially determined cost of the Program" and the "Pensioners and Surviving Spouses who elect coverage will contribute 10%" of that cost. (Dkt. 36-2 at A000072.) In 2002, when Acme was going through bankruptcy, it negotiated a replacement

agreement (the "2002 Agreement"). (Dkt. 1-5 at A000097–118.) The 2002 Agreement modified the 1994 Agreement's cost-sharing provision so that participants were now responsible for 20% of the program's projected monthly cost. (*Id.* at A000117, ¶10; *see also* Dkt. 90 at 46:4-16.)

Illinois Tool Works Inc. ("ITW") acquired the plant in 2003 and assumed Acme's obligations under the 2002 Agreement. *Signode Indus. Grp. LLC*, 943 F. 3d at 383. ITW closed the plant in 2004. *Id.* In 2014, ITW divested a portion of its business, which resulted in the creation of a separate entity, Signode Industrial Group LLC ("Signode"). *Id.*; (Dkt. 19, Answer, ¶ 12.) As part of a subsequent transaction, Signode assumed responsibility for the 2002 Agreement. *Signode Indus. Grp. LLC*, 943 F.3d at 383; (*see also* Dkt. 19 ¶¶ 50, 51.) On January 1, 2016, Signode terminated the 2002 Agreement. *Signode Indus. Grp. LLC*, 943 F.3d at 383–84.

Plaintiffs filed suit in 2017, alleging that Defendants breached the 2002 Agreement. *Id.* at 384; (*see also* Dkt. 1.)

## II. Liability Proceedings.

In February 2018, Defendants responded to Plaintiffs' discovery requests and produced several thousand pages of documents. (Ex. 1, Declaration of Joseph J. Torres ("Torres Decl."), ¶ 2, Ex. A.) Thereafter, on March 13, 2019, this Court granted summary judgment to Plaintiffs on liability (Dkt. 55, 56) and, on March 26, 2019, issued a permanent injunction, ordering Signode to "reinstat[e] the healthcare benefits that were in effect before January 1, 2016" under the 2002 Agreement. (Dkt. 64 at 1.) Defendants appealed this decision to the Seventh Circuit. (Dkt. 66.)

On May 3, 2019, Defendants moved to stay the injunction pending appeal. (Dkt. 71.) On May 6, 2019, Plaintiffs filed a show-cause motion to enforce the injunction (Dkt. 74), which they

2

renewed on May 24, 2019 (Dkt. 80).[1] On May 29, 2019, this Court denied Defendants' request to stay enforcement of the injunction (Dkt. 83), but the Seventh Circuit subsequently issued a stay (Dkt. 94). This Court therefore vacated the hearing on Plaintiffs' show-cause motion. (Dkt. 92.)

On September 19, 2019, the Seventh Circuit lifted its stay. (Dkt. 38.) On October 16, 2019, this Court held a hearing to discuss whether the show-cause hearing needed to resume, and determined that it did not because the parties had reached an agreement that the healthcare benefits would be reinstated by January 1, 2020. (Dkt. 101 at 8:2–9:11.) The Court directed the parties to prepare a joint order on the agreed compliance issues, and for any aspects of injunction compliance not agreed to, the Court directed Plaintiffs to "tee[] up, as I said, in a motion explaining why you think additional relief is necessary beyond what is agreed to." (*Id*. at 8:18–10:18.)[2] On November 1, 2019, this Court ordered that Defendants reinstate the benefits by January 1, 2020. (Dkt. 108.) Defendants did so. (*See generally* Dkt. 119.) Defendants also provided information to Plaintiffs regarding the substance of the reinstated coverage, and the process used to determine the 20% cost sharing obligation for participants who elected coverage. (Torres Decl., ¶¶ 5-6, Exs. D-H.)

On November 20, 2019, the Seventh Circuit affirmed the district court. *Signode Indus. Grp. LLC*, 943 F. at 383, 390. This case was transferred to Your Honor on February 28, 2020. (Dkt. 122.) The Court denied as moot Plaintiffs' show-cause motion "[i]n view of the Court's

---

[1] At the June 10, 2019 show-cause hearing, Signode's Benefits Manager explained the in-depth process of selecting, pricing and reinstating an insurance plan under which participants pay 20% of the cost, and which must provide the same coverage that was in effect before January 1, 2016. (Dkt. 88; Dkt. 90 at 35:5–69:12.) This involved collecting participant demographic data, presenting information to insurance providers to obtain bids and coverage options, and selecting the best provider to administer the plan. (Dkt. 90 at 35:5–69:12.) Signode's Benefits Manager explained that this process is typically lengthy, but that she was working to complete it in a much shorter timeframe. (*Id*. at 69:2-12.) That hearing was continued before it concluded. (Dkt. 88.)

[2] The Court reiterated this point on other occasions. (Dkt. 110 at 12:14-16 ("I do agree…if you have problems with particular aspects of implementation, you need to bring a motion.").)

3

November 1, 2019 order reinstating and setting steps to implement the permanent injunction." (Dkt. 128.) The Court made clear Plaintiffs could "refile the motion" if they "believe[d] the Court erred in determining that the motion is moot." (*Id*.) Plaintiffs have not refiled that motion.

### III.    Damages Proceedings.

This Court subsequently issued a "Scheduling Order Regarding Class Certification, Class Notice, Damages and Remedies, And Other Proceedings." (Dkt. 136, at 1-2) Class certification briefing is complete. In September and October 2020, Plaintiffs served document requests and interrogatories to Signode and to ITW (the "Discovery Requests"). Defendants timely responded. (Dkt. 150-3.) Those responses are the subject of Plaintiffs' Motion.

As Plaintiffs explain in their supporting brief, their Discovery Requests seek information related to two topics: (1) "'saved expenditures' and 'other consequential gains' realized by Signode and ITW" after Defendants ceased providing healthcare benefits in 2016, and (2) "injunction compliance," specifically the "healthcare restoration." (Dkt. 150 ("Br."), at 1.) Defendants objected to these Requests because, as discussed below, these topics are irrelevant to the remaining damages issues, and because there are no motions pending before the Court regarding Defendants' injunction compliance. In response to those objections, Plaintiffs filed the pending Motion.

### ARGUMENT

Plaintiffs' discovery is irrelevant to the sole issue left to resolve in this case: what, if any, make-whole relief should be awarded. Federal Rule of Civil Procedure 26(b)(2)(C)(iii) requires a court to limit discovery if it determines that the discovery is not "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(2)(C)(iii) (referencing Fed. R. Civ. P. 26(b)(1).) Courts "should not neglect their power to restrict discovery where 'justice requires [protection for] a party or person from . . . undue burden or expense,'" and should

"exercise appropriate control over the discovery process." *Sommerfield v. City of Chi.*, 613 F. Supp. 2d 1004, 1016 (N.D. Ill. 2009) (citations omitted).

**I.     Plaintiffs' Requests For Information On "Saved Expenditures" and "Other Consequential Gains" To Support Their Request For Disgorgement And Restitution Are Irrelevant Because ERISA Does Not Allow For These Equitable Remedies.**

Plaintiffs argue that Signode Interrogatory No. 1, Signode Document Request Nos. 1-4 and ITW Document Request Nos. 1-3 are permissible because Plaintiffs are entitled to seek "equitable remedies—like disgorgement and restitution" under "ERISA Section 502(a)(3) and Restatement §39." (Br. at 2.)  In particular, Plaintiffs contend the discovery they seek will demonstrate "saved expenditures" and other "consequential gains" realized by Signode and ITW after they canceled the retirees' healthcare benefits in 2016.[3]  (Br. at 1, 3.)

Under clearly established law, however, Plaintiffs are not entitled to the equitable remedies they seek.  Supreme Court and Seventh Circuit precedent has long recognized that plaintiffs seeking benefits they claim were wrongfully denied may not recover compensatory and punitive damages.  Case law is similarly clear that where plaintiffs can obtain make-whole relief under Section 502(a)(1)(B) of ERISA, they may not seek equitable remedies under Section 502(a)(3). Faced with this, Plaintiffs here rely primarily on a dissenting opinion from an out-of-circuit case, outdated Seventh Circuit cases, and general Restatement sections that do not consider ERISA particularities.  (Dkt. 141 at 4–8.)  The Court should reject Plaintiffs' untenable position.

---

[3] As noted *supra*, there is no dispute ITW had no role in Signode's termination of the 2002 Agreement.  (*See also* Dkt. 90 at 138–41 (discussing Signode's assumption of liability for the 2002 Agreement).)  This further undermines any need to seek discovery from ITW, as there is no plausible argument ITW in any way benefited from Signode's independent act.

5

A.  **ERISA Sets Forth A Specific Enforcement Scheme With Proscribed Remedies.**

The civil enforcement provisions of ERISA are set forth in § 502(a) of the statute. As relevant to Plaintiffs' Motion, § 502(a) provides that a civil action may be brought—

(1) by a participant or beneficiary— (A) for the relief provided for in subsection (c) of this section, or (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
. . .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Section 502 is a "carefully crafted and detailed enforcement scheme" that "provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (citations omitted). Given this clear framework, the Supreme Court held long ago that ERISA did not allow extracontractual damages in cases seeking wrongfully denied benefits. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985) ("ERISA, the structure of the entire statute, and its legislative history all support the conclusion that in § 409(a) Congress did not provide, and did not intend the judiciary to imply, a cause of action for extracontractual damages caused by improper or untimely processing of benefit claims."); *see also Harzewski v. Guidant Corp.*, 489 F.3d 799, 804 (7th Cir. 2007) (ERISA "authorizes suits for benefits, just not for damages separate from those benefits; so only extracontractual damages are prohibited.") (quotation and citations omitted).

For example, in *Harsch v. Eisenberg*, 956 F.2d 651 (7th Cir. 1992), the plaintiffs sued the plan's trustee and administrator for delaying benefit payments due under the plan. *Id.* at 652–63. The Seventh Circuit considered whether extracontractual compensatory or punitive damages resulting from the delay were recoverable under sections 502(a)(1)(B) or 502(a)(3)(B), and

6

concluded that they were not. *Id*. at 654–63. "In light of ERISA's carefully crafted remedial scheme, the complete absence in section 502(a) of any mention of extracontractual damages demonstrates Congress' deliberate intent not to afford such a remedy." *Id.* at 655 (citing *Russell*, 473 U.S. at 146–47); *see also Bowe Bell & Howell Co. v. IMMCO Emps. Ass'n*, No. 03 C 8010, 2007 WL 734391, at *5 (N.D. Ill. Mar. 1, 2007) (citing *Harsch* and denying compensatory, consequential, and punitive damages under 502(a)(1)(B) and 502(a)(3)).

These principles clearly control the relief Plaintiffs may seek for breach of the 2002 Agreement. (*See* Dkt. 1 (setting forth claims for breach).) Because Plaintiffs cannot recover extracontractual remedies such as disgorgement and restitution for that breach, there is no basis for allowing discovery regarding such remedies. *Cf. Am. Serv. & Prod., Inc. v. Aetna Health Ins. Co.*, No. 10 C 7055, 2011 WL 2415172, at *4 (N.D. Ill. June 9, 2011) (striking prayer for award of lost profits because such compensatory damages are not available under ERISA § 502(a(1)(B)).

### B. Because Plaintiffs Can Be Made Whole Under ERISA § 502(a)(1)(B), They Cannot Seek Relief Under § 502(a)(3).

The fact that ERISA § 502(a)(3) contemplates the possibility of an award of equitable relief does not provide any better support for Plaintiffs' Motion. This is because ERISA's "carefully crafted and detailed enforcement scheme" does not entitle Plaintiffs to recover under ERISA § 502(a)(3) when they have a claim for relief under ERISA § 502(a)(1)(B).

Plaintiffs acknowledge, as they must, that ERISA § 502(a)(3) is a "'catchall'" provision that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996); (*See* Dkt. 141 at 3). Consistent therewith, courts in this circuit have repeatedly held that *Varity* precludes relief under ERISA § 502(a)(3) where participants have a claim for benefits pursuant to ERISA §502(a)(1)(B). *See, e.g.*, *Nemitz v. Metro. Life Ins. Co.,* No. 12 C 8039, 2013

7

WL 3944292, at *3–4 (N.D. Ill. July 31, 2013) (explaining "where § 502(a)(1)(B) provides adequate relief, identical relief is not available under § 502(a)(3)" and noting that "the majority of circuits" and "courts in this district have nearly uniformly adopted this rule" (citing cases))[4]; *Krase v. Life Ins. Co. of N. Am.*, No. 11 C 7659, 2012 WL 4483506, at *2 (N.D. Ill. Sept. 27, 2012) ("judges in this District have consistently dismissed claims for 'equitable relief' under subsection (a)(3) where relief is available under…(a)(1)(B) for denial of benefits").

Plaintiffs here filed suit for breach of the 2002 Agreement. And "[t]he Supreme Court has explained that the remedy provided in § 1132(a)(1)(B) is designed 'to protect contractually defined benefits,'. . . and in keeping with its contract-law foundations, the cause of action offers typical contract forms of relief, including recovery of benefits accrued or otherwise due, declaratory judgments to clarify plan benefits, and injunctions against future denial of benefits." *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 911 (7th Cir. 2013) (citations omitted). Because § 502(a)(1)(B) can make Plaintiffs whole for any losses they incurred, they may not seek extra-contractual remedies under § 502(a)(3). *See* cases cited *supra*.

Notwithstanding the overwhelming precedent contradicting Plaintiffs' argument, Plaintiffs advance their argument by relying on the *dissent* in an *out-of-circuit* case, *Rochow v. Life Ins. Co. of N.A.*, 780 F.3d 364 (6th Cir. 2015) (en banc), *cert. den.* 136 S. Ct. 480. (Dkt. 141 at 4–7.) But *Rochow* only undermines Plaintiffs' position. In that case, the court held the defendant's denial of benefits violated ERISA and granted the plaintiff "all benefits that he had been wrongfully denied under § 502(a)(1)(B)." *Rochow*, 780 F.3d at 370. Rochow requested an equitable accounting and

---

[4] *Nemitz* also clarified that "adequate relief does not mean recovery, it means that an adequate remedy is available." 2013 WL 3944292, at *4. "[W]hether plaintiffs' § 502(a)(1)(B) claim will succeed is irrelevant; the pertinent inquiry is whether [p]laintiff can state a claim under § 502(a)(1)(B)." *Id.* (quoting *Hakin v. Accenture United States Pension Plan*, 656 F. Supp. 2d 801, 810–11 (N.D. Ill. 2009)).

8

disgorgement to prevent the defendant's "unjust enrichment resulting from profits it earned on the wrongfully retained benefits." *Id.* at 368.

Answering "no" to the "one question" before the court—"Is Rochow entitled to recover under both ERISA § 502(a)(1)(B) and § 502(a)(3) for [the plan administrator's] arbitrary and capricious denial of long-term disability benefits?"—the Sixth Circuit underscored the Supreme Court's directive that 502(a)(3) is a "safety net," and held that Rochow was "made whole" when he recovered the withheld disability benefits. *Id.* at 370–72 (citing *Varity Corp.*, 780 F.3d at 371). It further explained:

> ERISA remedies are concerned with the adequacy of relief to redress the claimant's injury, not the nature of the defendant's wrongdoing. The district court's use of equitable relief under § 502(a)(3) as the vehicle for its disgorgement award misses the mark. Instead of focusing on the relief available to make Rochow whole, *the award reflects concern that [the plan administrator] had wrongfully gained something, a consideration beyond the ken of ERISA make-whole remedies.*

*Id.* at 371 (emphasis added.)

Here, Plaintiffs are entitled to relief under § 502(a)(1)(B) to recover any funds they can demonstrate they paid for healthcare between 2016 and 2020, above what their healthcare would have cost had Signode not canceled their coverage in 2016.[5] *Larson*, 723 F.3d at 911; *Rochow*, 780 F.3d at 370–72. Because Plaintiffs are made whole by any relief they are entitled to under § 502(a)(1)(B), § 502(a)(3)'s "catchall" is therefore inapplicable. *Varity Corp.*, 516 U.S. at 512.[6]

---

[5] Judge Durkin acknowledged this is the proper metric for damages in this case. (Dkt. 78 at 16:14-16 ("They're going to get – if this is affirmed on appeal, they're going to get past damages. They'll get the difference between what UMR would cost and what they're paying now."))

[6] Plaintiffs contend that this Court should look past this unequivocal law, and allow Plaintiffs to seek equitable remedies because ERISA "*expressly* protects workers' 'interests,' 'security,' and 'well-being.'" (Dkt. 141 at 13.) But addressing similar arguments, the Supreme Court has directed that "vague notions of a statute's 'basic purpose' are . . . inadequate to overcome the words of its text regarding the *specific* issue under consideration." *Montanile v. Bd. of Trs. of Nat. Elevator Ind.*, 577 U.S. 136, 150 (2016) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 261 (1993)).

### C. Plaintiffs Are Not Entitled To Restitution Because They Do Not Seek Specifically Identified Funds That Remain In The Defendants' Possession.

Plaintiffs are also not entitled to restitution because they seek funds from Defendants' general assets, and not particular funds or property in Defendants' possession that belong to Plaintiffs. "[N]ot all relief falling under the rubric of restitution is available in equity." *Great-West Life & Annuity Ins. Co.*, 534 U.S. at 212. Whether restitution "is legal or equitable depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought." *Id.* at 213 (internal quotations and citations omitted).

Restitution is legal where the plaintiff seeks "to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money." *Id.* (citation omitted). In contrast, restitution is equitable where the plaintiff seeks "a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.*

In *Great-West*, the Court held that § 502(a)(3) did not authorize the plaintiff's action for restitution because "[t]he basis for petitioners' claim [was] not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to *some* funds for benefits that they conferred." *Id*. at 214, 221. Relying on *Great-West* and *Montanile*, the Seventh Circuit likewise holds that a § 502(a)(3) "remedy is properly regarded as equitable *only* if the plaintiff seeks the return of 'specifically identified funds that remain in the defendant's possession or . . . traceable items that the defendant purchased with the funds.'" *Cent. States, Se. & Sw. Areas Health & Welfare Fund ex rel. Bunte v. Health Special Risk, Inc*, 840 F.3d 448, 453 (7th Cir. 2016) (quoting *Montanile*, 577 U.S. at 144–45).

As in *Great-West*, *Montanile*, and *Central States*, Plaintiffs cannot identify particular funds in Defendants' possession that belong to Plaintiffs. Instead, Plaintiffs seek to recover the "saved

10

expenditure" and "consequential gains." (Dkt. 141 at 10.) This request to "recover[] money to pay for some benefit [Plaintiffs claim] defendant[s] ha[ve] received from [them]" is precisely the relief the Supreme Court and Seventh Circuit have held is unavailable under § 502(a)(3). *Great-West Life & Annuity Ins. Co.*, 534 U.S. at 212; *see also Cent. States, Se. & Sw.*, 840 F.3d at 453.

### D. Plaintiffs' Reliance On Outdated Seventh Circuit Case Law Does Not Save Their Request For Equitable Remedies.

Plaintiffs cite several Seventh Circuit cases to present the illusion that there is legal support for their § 502(a)(3) claim. (Dkt. 141 at 6.) But these cases are no longer good law and distinguishable. The Seventh Circuit is explicit that Plaintiffs' cases are no longer good law in light of *Great-West* and *Montanile*. In *Mugnai v. Kirk Corp.*, 843 F. Supp. 2d 858 (7th Cir. 2012), the plaintiffs brought claims under both § 502(a)(1)(B) and § 502(a)(3), alleging the defendants failed to properly secure installment notes due to the plaintiffs after the plan sponsor purchased the participants' company stock. *Id*. at 862–64. Relying on *Clair v. Harris Trust and Savings Bank*, 190 F.3d 495, 496–97 (7th Cir. 1999)—also relied on by Plaintiffs here—the *Mugnai* plaintiffs argued that they had a valid claim for restitution under 502(a)(3) because they did not receive benefits they were entitled to under the ESOP plan. *Id.* at 875. The court rejected this argument, explaining that since "*Clair* . . . the Supreme Court has clarified the meaning of 'other appropriate equitable relief' that is available under Section 502(a)(3), specifically examining the remedy of restitution." *Id.* As in *Great-West*, the "basis for Plaintiffs' claims is not that the Trustees hold particular funds that belong to Plaintiffs, but rather that Plaintiffs are entitled to the benefits they did not receive as a result of the Trustees' actions." *Id*. at 876.[7]

---

[7] Plaintiffs also cite *May Dep't. Stores Co. v. Federal Ins. Co.*, 305 F.3d 597, 603 (7th Cir. 2002) (Dkt. 141 at 6), which likewise predated *Great-West* and relied on *Clair*.

11

Plaintiffs' cases are also inapposite because they do not involve situations—like here—where the plaintiff has a claim for benefits under § 502(a)(1)(B). *See Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 881 (7th Cir. 2013) (plan participant sought remedies under § 502(a)(3) where plan fiduciary mislead her into believing that she was entitled to benefits that she was "not actually entitled to . . . under the terms of the plan"); *Lorenzen v. Emps. Ret. Plan*, 896 F.2d 228, 235 (7th Cir. 1990) ("Mrs. Lorenzen had no contractual entitlement to retirement benefits—this much is clear—since her husband did not survive until retirement."); *Clair*, 190 F.3d at 496–97 (holding plaintiffs could not "recover[] in a suit under section 502(a)(1)(B)" because they did not "seek unpaid benefits" but rather "[t]heir complaint is that their benefits were not paid in a timely fashion and as a result they lost the time value of the money").[8]

## II. Plaintiffs Have No Basis To Request Information Related To Injunction Compliance.

Plaintiffs' Discovery Requests (Signode Interrogatory Nos 2-3, ITW Interrogatory Nos. 2-3, Signode Document Request Nos. 5-13, and ITW Document Requests Nos. 4-9) also seek information they assert relates to "injunction compliance," claiming that they "expect the facts to show" that "the 'restored' healthcare is not 'comparable' to" the healthcare that was in effect before January 1, 2016.[9] (Br. at 4.)

---

[8] Plaintiffs also rely on Restatement (Third) of Restitution and Unjust Enrichment § 39. (Dkt. 141 at 7–8.) But the Restatement does not concern the statutory remedies prescribed by § 502(a)(3), and cannot override ERISA's "carefully crafted and detailed enforcement scheme."

[9] Discovery directed at ITW is again improper because Signode, not ITW, is contractually obligated to provide any coverage under the 2002 Agreement. (Dkt. 90 at 141–42). Therefore, injunction compliance is Signode's responsibility. (*Id.*) ITW's responses to Plaintiffs' latest requests also make clear they have no information regarding Signode's actions. (Dkt. 150-3 at 3 (response to Interrogatory no. 2), 4 (response to Interrogatory No. 2), 9 (response to Request No. 6) and 10 (response to Request No. 7).)

As a threshold matter, the Scheduling Order currently in effect does not allow for discovery on injunction compliance. (Dkt. 136.) It contemplates only discovery on "damages/remedies" and nowhere mentions injunction compliance. (*Id.* at 2.) *See also In re Fedex Ground Package Sys., Inc., Emp't Practices Litig.*, No. 3:05 MD 527 RM, 2006 WL 2604599, at *3–4 (N.D. Ind. Sept. 6, 2006) (denying motion to compel discovery on topics outside scope of scheduling order).

More fundamentally, the problem with Plaintiffs' discovery is that it seeks information related to injunction compliance without first filing a motion, despite this Court's repeated instructions for Plaintiffs to do so if they feel they have a good faith basis to assert that Defendants have not complied. (*See* Dkt. 101 at 8:18–10:13 (any "aspects" of injunction compliance "not agreed to should be teed up, as I said, in a motion explaining why you think additional relief is necessary beyond what is agreed to"); Dkt. 110 at 12:14-16 ("I do agree, Mr. Adam, if you have problems with particular aspects of implementation, you need to bring a motion); Dkt. 128 (instructing Plaintiffs to "refile the [show-cause motion to enforce the permanent injunction]" if they "believe[d] the Court erred in determining that the motion is moot.").)[10]

Plaintiffs' failure to file a motion, despite the directives that they do so for over a year now, underscores that they have no identified basis to allege non-compliance with the injunction, and their Discovery Requests are nothing more than a fishing expedition. Plaintiffs also ignore the fact that Signode has provided information regarding the benefits that were reinstated effective January 1, 2020, along with materials explaining how the participants' premiums were calculated. (Torres

---

[10] Plaintiffs cite *Pyro Spectaculars Inc. v. Souza*, 861 F. Supp. 2d 1079, 1098 (E.D. Cal. 2012), to argue "[a] party is also entitled to discovery to 'monitor' injunction compliance." (Br. at 6.) *Pyro*, however, involved a request for a preliminary injunction. *Pyro*, 861 F. Supp. 2d at 1081. It did not, like here, involve the damages phase of a lawsuit. *Id.* There was no order in *Pyro* limiting discovery, or numerous express directives from the court that if the plaintiffs had issues with injunction compliance they should first articulate their issues in a motion.

13

Decl., ¶¶ 5-6, Exs. D-H.) Plaintiffs also have a description of the benefits in place when the 2002 Agreement was terminated, and the premiums being charged at that time. (*Id*., ¶¶ 3-4, Exs. B-C.) If Plaintiffs had specific, substantive questions about these materials, the efficient process would have been to engage in a substantive dialogue and identify specific issues.[11]

But, in any event, if Plaintiffs truly believe they have a specific basis for claiming Defendants have not complied with the injunction, they should be required to raise such issues by filing a motion and identifying the specific non-compliance issues, and supporting their contentions with specific factual and legal support. And Defendants should have an opportunity to respond to those accusations regarding Signode's alleged non-compliance before being subjected to wide-ranging discovery. Having failed to do so, Plaintiffs should not be allowed to serve broad discovery regarding unspecified "injunction [non]compliance."[12]

## Conclusion

The facts of this litigation's progress, both before and after liability was determined, *see* discussion *supra*, shows there is no basis for Plaintiffs' claim that Defendants have "obstruct[ed] the progress of this litigation." (Dkt. 150 at 7). And none of Plaintiffs' latest discovery would provide any information that will allow Plaintiffs to demonstrate any relief they can claim under well-established principles. Defendants therefore respectfully request that this Court deny

---

[11] One of the Plaintiffs in this case is a large labor union that has experience administering health insurance benefits for retirees. *See Steelworkers Health & Welfare Fund*, United Steelworkers, https://www.usw.org/members/bargaining/steelworkers-health-welfare-fund (last visited Dec. 31, 2020). So there clearly is the ability for the parties to substantively discuss any specific concerns Plaintiffs may have.

[12] Plaintiffs' injunction compliance requests are also overbroad. For example, Plaintiffs request "[a]ll documents describing the retiree healthcare provided by ITW or Signode from 2004 through the present" (Dkt. 150-3 at Request No. 8), but information regarding healthcare before 2015 is irrelevant to injunction compliance because the permanent injunction ordered Defendants to reinstate the coverage in effect when it was terminated in January 2016. (Dkt. 64.)

Plaintiffs' Motion, and hold that Plaintiffs are not entitled to equitable remedies under ERISA § 502(a)(3), and therefore not entitled to discovery related to those remedies.

Defendants further request that the Court hold that Plaintiffs are not entitled to discovery on injunction compliance. By asking for discovery contrary to clear precedent, and embarking on a fishing expedition, it is Plaintiffs' actions, not Defendants', which are delaying the resolution of this matter, and the ultimate recovery of any permissible relief.

Dated: December 31, 2020    Respectfully submitted,

SIGNODE INDUSTRIAL GROUP LLC and ILLINOIS TOOL WORKS INC.

By: _____/s/ Joseph J. Torres_____
One of Their Attorneys

Joseph J. Torres
Emma J. O'Connor
Jenner & Block LLP
353 North Clark Street
Chicago, IL  60654
(312) 840-8685
jtorres@jenner.com

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that on December 31, 2020, he caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Northern District of Illinois of the United States District Court using the CM/ECF system and thereby served upon:

>John G. Adam
>Legghio & Israel, P.C.
>306 South Washington, Suite 600
>Royal Oak, Michigan 48067
>jga@legghioisrael.com
>
>Stephen A. Yokich
>Dowd, Bloch, Bennett, Cervone,
> Auerbach & Yokich
>8 S. Michigan Ave., 19th Floor
>Chicago, Illinois 60603
>syokich@laboradvocates.com

  /s/  *Joseph J. Torres*
     Joseph J. Torres