## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| HAROLD STONE and JOHN WOESTMAN, for themselves and others similarly-situated, and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO-CLC, | No. 17-cv-05360 |
| Plaintiffs, | Judge John F. Kness |
| v. | |
| SIGNODE INDUSTRIAL GROUP, LLC and ILLINOIS TOOL WORKS, INC., jointly and severally, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

In 2016, Defendants Signode Industrial Group, LLC, and Illinois Tool Works, Inc. unlawfully terminated promised healthcare benefits for Plaintiffs, a class of retirees and their dependents. On March 26, 2019, this Court enjoined Defendants to reinstate Plaintiffs' healthcare benefits that were in effect before January 1, 2016. Defendants implemented a new healthcare benefits plan effective January 1, 2020, but Plaintiffs contend that the new plan is deficient. To address the alleged harms caused by the new plan, Plaintiffs filed a Motion for Disgorgement and Restitution, Restoration of Promised Healthcare, and Court-Appointed Neutrals (Dkt. 235) and a

Motion to Enforce Injunction Orders (Dkt. 237). Defendants filed a Motion to Exclude the Report and Testimony of Stuart I. Wohl (Dkt. 245), an expert report that Plaintiffs rely upon heavily in both motions. For the reasons stated below, the Court denies both of Plaintiffs' motions (Dkts. 235; 237) and grants Defendants' motion (Dkt. 245).

## I.     BACKGROUND

Plaintiffs Harold Stone and John Woestman are retired employees of Acme Packaging Corporation ("Acme") who worked at the former Acme plant in Riverdale, Illinois. (Dkt. 55 at 2.) Stone and Woestman were members of Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFLCIO-CLC ("USW"). (*Id.*) When Acme went into bankruptcy in 2002, it negotiated a collective bargaining agreement ("CBA") with USW as part of the bankruptcy settlement. (*Id.*; Dkt. 238-1.) The CBA mandated Acme to administer its retiree healthcare benefits program for the duration of Stone and Woestman's lives, a plan Acme implemented in 2002 (the "2002 Plan"). (Dkt. 238-1 at 4.)

Acme was acquired by Defendant Illinois Tool Works, Inc. ("ITW") after emerging from bankruptcy in 2003, but ITW continued to provide benefits under the CBA. (Dkt. 55 at 2.) ITW transferred its obligations under the CBA to Defendant Signode Industrial Group LLC ("Signode") in 2014. (*Id.* at 3.) In 2015, Signode announced that it was terminating the CBA, and benefits would be discontinued on January 1, 2016. (*Id.*) Plaintiffs initiated this action in July 2017 seeking to reinstate their healthcare benefits. (*See* Dkt. 1.) On March 13, 2019, the Court ruled that

Signode and ITW unlawfully terminated the healthcare benefits provided under the CBA. (*See* Dkt. 55; Dkt. 235 ¶ 1.) *Stone v. Signode Indus. Grp., LLC*, 365 F. Supp. 3d 957 (N.D. Ill. 2019), *aff'd* 943 F.3d 381 (7th Cir. 2019), *reh. and reh. en banc den.* (7th Cir. 2020), *cert. den.*, 141 U.S. 246 (2020). ITW and Signode were enjoined to reinstate the promised healthcare under the CBA. (Dkts. 64; 108; 235 ¶ 1.)

Signode began the reinstatement process in May 2019, when it sent correspondence to the retirees, informing them that their healthcare benefits would be restored. (Dkts. 249 at 1; 238-15 at 1.) Signode worked with benefits consultant Assured Partners ("AP") to seek quotes from various healthcare administrators. (Dkt. 249-1 ¶¶ 11–12.) AP requested quotes from four different plan administrators, but only one—United Healthcare/United Medical Resources ("UMR")—provided a quote in response. (*Id.*) Because UMR was willing to take on the complex project and was already providing coverage for Signode's other employees, Signode accepted UMR's offer. (*Id.* ¶¶ 13–14.) Signode and UMR engaged in several conversations in an effort to duplicate the coverage provided in the 2002 Plan. (*Id.* ¶¶ 14–23.) Throughout this reinstatement process, Signode sent multiple letters to the retirees informing them of the status of the reinstatement, asking them to enroll in the pending new coverage, and making itself available to the retirees for questions and concerns. (Dkts. 249 at 5; 238-15–238-19.) Signode rolled out the new retirement healthcare plan effective January 1, 2020 (the "2020 Plan"). (Dkt. 238 at 4.)

Plaintiffs allege that the 2020 Plan does not "reinstate, restore, and replicate" the 2002 Plan mandated under the CBA. (Dkt. 238 at 4.) According to Plaintiffs, the

2020 Plan has "different administrators, different coverages, different networks of doctors and healthcare providers, and a different prescription program." (*Id.*) Plaintiffs argue that most retiree-families under the 2020 Plan are "*still* being deprived of *all* 'contractual entitlements.'" (*Id.* (emphasis in original).) Plaintiffs now seek an order enforcing the Court's injunction to reinstate the plan under the CBA. (Dkts. 237; 238.) Plaintiffs also ask this Court to (1) order disgorgement and restitution to redress past and ongoing harms from the termination of healthcare benefits under the CBA; (2) replace the 2020 Plan with a better alternative; and (3) appoint special masters and other neutrals to assist with fashioning adequate remedies. (Dkts. 235; 236.) For their part, Defendants move to exclude the report and testimony of Plaintiffs' expert Stuart I. Wohl, whose testimony Plaintiffs rely on extensively in support of their motion to enforce the injunction. (Dkt. 245.)

## II.    Defendants' Motion to Exclude Stuart I. Wohl's Expert Testimony

Plaintiffs' arguments in their motion to enforce the injunction (Dkt. 237) rely heavily on the report and testimony of Stuart I. Wohl, a consultant Plaintiffs hired to assess how the 2020 Plan compares to the 2002 Plan. (*See* Dkts. 237 at 13–25; 238-2 ¶¶ 1, 7.) Defendants move to exclude Wohl's report and testimony (the "Wohl Report"). (Dkt. 245.) Defendants argue that the Wohl Report must be excluded because Wohl's opinions allegedly "are not supported by appropriate citations and/or corresponding explanations," are offered "about topics . . . he does not understand," and are "simply Wohl's own speculation about retirees' state of mind." (*Id.* at 1–2.)

4

Citing these reasons, Defendants contend that the Wohl Report is "neither reliable nor helpful" and should be excluded in its entirety. (*Id.*)

### A. Legal Standard

A witness who is qualified as an expert by "knowledge, skill, experience, training, or education" may testify if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the Supreme Court explained in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), a court's decision whether to admit an expert's testimony or opinion must be guided by three determinations: (1) whether the witness is qualified; (2) whether the expert's methodology is scientifically reliable; and (3) whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. *Ploss v. Kraft Foods Grp., Inc.*, 637 F. Supp. 3d 561, 570–71 (N.D. Ill. 2022) (citing *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010)).

In determining admissibility, a court must consider the "proposed expert's full range of experience and training in the subject area, as well as the methodology used to arrive at a particular conclusion." *Id.* at 571 (citing *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)). The "key" to admitting expert testimony is "not the ultimate correctness of the expert's conclusions. Instead, . . . the inquiry must focus . . . solely on principles and methodology, not on the conclusions they generate."

*Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013) (quoting *Daubert*, 509 U.S. at 595).

**B. Discussion**

1. *Wohl Is Qualified.*

The parties do not dispute that Wohl is qualified as an expert to offer testimony on healthcare plans. (*See* Dkts. 256 at 2–3; 262 at 2.) Wohl is a Senior Vice President and Senior Benefits Consultant for Segal, a human resource and benefits consulting firm hired by Plaintiffs. (Dkt. 238-2 at 3.) Wohl is a licensed Life and Health Insurance Consultant in multiple states with more than thirty years of healthcare consulting experience, specializing in retirement healthcare. (*Id.*) Based on his licensure and extensive professional experience, Wohl is qualified as an expert witness. *See Andersen v. City of Chicago*, 454 F. Supp. 3d 740, 744 (N.D. Ill. 2020); *Merrill v. Briggs & Stratton Corp.*, No. 10-cv-700, 2015 WL 5172943, at *5 n.7 (E.D. Wis. Sept. 2, 2015).

2. *Wohl's Methodology Is Unreliable and Unhelpful.*

Defendants argue that the Wohl Report is "neither reliable nor helpful" because (1) his opinions on the content of the two Plans are not supported with citations or other explanations; (2) he offers opinions about topics he admittedly does not understand; (3) he makes conclusions about retirees' states of mind without speaking to any retiree; and (4) portions of the Wohl Report are not properly the subject of expert opinion. (Dkt. 246 at 1–2.) Plaintiffs contend that the Wohl Report

is "helpful" and should be considered by the Court, which can then "apply what is helpful and disregard what, if anything, is not." (Dkt. 256 at 5.)

Expert testimony is unreliable—and thus inadmissible—if it is not supported by citations or sufficient explanations of how the expert arrived at his opinions. *See, e.g.*, *Schultz v. Walmart, Inc.*, No. 19-cv-03303, 2022 WL 715458, at *6 (N.D. Ill. Mar. 10, 2022) (citing *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 505–09 (7th Cir. 2003) (excluding report of expert who "failed to provide a technical or underlying rationale to support his proposed opinion"); *In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, No. 12 C 6279, 2015 WL 3669933, at *20–33 (N.D. Ill. June 12, 2015) (excluding testimony of expert who failed to provide citations to support his opinions and did not sufficiently explain how he reached his conclusions). An expert who asks a court to "take him at his word that his opinions are correct" without further support does not have a "reliable methodology." *Andersen*, 454 F. Supp. 3d at 745. Such testimony is impermissible and cannot be admitted. *Id.* Instead, an expert who relies on his expertise must either connect his experience to the opinions he offers or cite "sound professional standards" that support those opinions. *Id.* (quoting *Jiminez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013)).

The Wohl Report provides Wohl's opinions with respect to the material differences between the 2002 Plan and the 2020 Plan, along with additional opinions related to the sufficiency of the 2020 Plan in restoring the retirees' healthcare. (*See* Dkt. 238-2.) Wohl first concludes in the Wohl Report that the 2020 Plan "is and will be understood by the retirees as being materially different from the [2002 Plan]" until

it was discontinued in January 2016. (*Id.* at 3.) Wohl also concludes that Defendants'
2020 Plan "overcharges retirees and discourages retirees from participating in" that
Plan. Wohl states that Defendants' proposed remedies to rectify the period between
2016 and 2019 when the retirees had no healthcare "imposes unfair burdens on the
retirees."

Wohl's conclusions, along with the other conclusions in the Wohl Report, are
not supported by citations or other explanations. The Wohl Report frequently makes
declarations that begin with "in my opinion," and then provide Wohl's professional
opinion on a certain matter related to the Plans, without citations or further
explanations for that opinion. (*See, e.g.*, *id.*) For instance, the Wohl Report assesses
that the 2020 Plan provides different coverage for ambulances, chiropractic care,
nursing, and vision but fails to cite to either Plan in support of that assessment. (*Id.*
at 4–5.)

The Wohl Report thus appears to be based on Wohl's speculations supported
by his own expertise. But it does not sufficiently connect that expertise to the opinions
presented in the Report. On the contrary, Wohl admits that he "did not have details
of how the [2002 Plan] was administered before 2016 so it is difficult to completely
analyze the differences" between the 2002 Plan and the 2020 Plan. (*Id.* at 5.) Wohl
later admits, after concluding that the 2020 Plan overcharges retirees and
discourages them from participation in the Plan, that he did not know certain values
of the Plans and thus did "not understand why those costs [we]re included and
charged to the retirees." (*Id.* at 7.) These are but a few examples of the speculative

8

conclusions contained in the Wohl Report. Wohl summarizes and opines over various elements of the Plans without explaining how his experience yields his conclusions and without citing sufficient evidence to substantiate his opinions. Because the Court's gatekeeping function "requires more than simply 'taking the expert's word for it,'" the opinions and conclusions about the Plans in the Wohl Report are not sufficiently reliable to be admissible. Fed. R. Evid. 702 advisory committee's note to 2000 amendment; *United States v. Northrop Grumman Sys. Corp.*, No. 09 CV 7306, 2015 WL 5916871, at *5 (N.D. Ill. Oct. 8, 2015).

Another reason that the Wohl Report must be excluded is that it improperly contains references to retirees' states of mind. State of mind opinions are not proper expert testimony when the expert provides no basis or foundation for making those opinions. *See, e.g.*, *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998); *Fife v. mPhase Techs., Inc.*, No. 12 C 9647, 2014 WL 2514565, at *5 (N.D. Ill. June 4, 2014); *George v. Kraft Foods Glob., Inc.*, 800 F. Supp. 2d 928, 932 (N.D. Ill. 2011). Such opinions are instead merely speculative and not based on the application of sound principles and methodology. *See Northrop Grumman*, 2015 WL 5916871, at *5. Such is the case here. In many instances, the Wohl Report speculates about how the 2020 Plan "will be understood by the retirees." (Dkt. 238-2 at 3; *see also id.* at 5 ("[W]e believe these differences are and will be understood as material and significant."); *id.* at 11 (describing Defendants' communications with the retirees as "imprecise and confusing" and the cause of "confusion and anxiety")).) But Wohl makes these conclusions about the retirees' state of mind without providing any evidence that he

spoke to any of the retirees. Because Wohl had no foundation to make these state of mind opinions, they constitute inadmissible witness testimony.

Finally, the Wohl Report must be excluded because it contains impermissible legal conclusions. Rule 704 of the Federal Rules of Evidence permits expert witnesses to testify as to the ultimate issue in an action, but it does not authorize those opinions to be legal conclusions that will determine the outcome of the case. Fed. R. Evid. 704; *see also Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003); *Pursley v. City of Rockford*, No. 18-cv-50040, 2024 WL 1050242, at *7 (N.D. Ill. Mar. 11, 2024). Sections F and G of the Wohl Report contain inadmissible legal conclusions about what remedies Wohl believes are available and adequate in this case. (Dkt. 238-2 at 14–18.) The remedies available in this action are a disputed issue in this case that are the subject of one of Plaintiffs' pending motions (Dkt. 235). It is thus outside the scope of appropriate expert testimony for the Wohl Report to make legal conclusions about remedies.

Accordingly, because the Wohl Report is unreliable, it must be excluded. The fact that the Wohl Report might be "helpful," as Plaintiffs contend, is not the only thing the Court must consider when determining whether to admit the Report. (*See* Dkt. 256.) Because the Report is based on unsupported opinions, inappropriate state of mind opinions, and legal conclusions, it is unreliable and not helpful to the Court. Defendants' Motion to Exclude the Wohl Report (Dkt. 245) is therefore granted, and the Wohl Report is excluded.

## III.  Plaintiffs' Motion to Enforce Injunction Orders

After Defendants unlawfully terminated the retirees' healthcare, the Court permanently enjoined Defendants to restore the *status quo*. (Dkt. 64.) Specifically, Defendants were ordered to (1) reinstate the healthcare benefits that were in effect before January 1, 2016 under the 2002 Plan; and (2) notify each retiree in writing that the healthcare benefits will be restored and that the matter will be appealed to the Seventh Circuit. (*Id.*) Plaintiffs argue that Defendants have not met their injunction obligations and contend that the 2020 Plan does not restore the status quo of the 2002 Plan. (Dkt. 237.) Plaintiffs ask the Court to enforce its injunction order and direct Defendants to "*truly* restore the *status quo*" by replicating and restoring the healthcare in the 2002 Plan—or by providing a comparable alternative. (*Id.*) For the reasons that follow, the Court finds that Plaintiffs have not shown by clear and convincing evidence that Defendants have violated the Court's injunction order. Accordingly, Plaintiffs' motion to enforce injunction orders (Dkt. 237) is denied.

### A.  Legal Standard

A party seeking to enforce an injunction order often moves for that enforcement in combination with a motion to hold the allegedly noncompliant party in civil contempt. *See, e.g.*, *Heckmann Bldg. Prods. Inc. v. Hohmann & Barnard, Inc.*, No. 10 C 4262, 866 F. Supp. 2d 965, 972–76 (N.D. Ill. 2012). As the Seventh Circuit has held, a party seeking a civil contempt order must "demonstrate by clear and convincing evidence that the [opposing party] has violated the express and unequivocal command of a court order." *F.T.C. v. Trudeau*, 579 F.3d 754, 763 (7th Cir. 2009). In

11

other words, a court can act to enforce a court order if the moving party shows that (1) the order sets forth an unambiguous command; (2) the noncompliant party violated that command; (3) the violation did not substantially comply with the order; and (4) the noncompliant party failed to take steps to reasonably and diligently comply with the order. *Id.* at 763 (citing *Prima Tek II, L.L.C. v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 542 (7th Cir. 2008). The court may take action to enforce the inunction if it finds that the allegedly noncompliant party "has not been reasonably diligent and energetic in attempting to accomplish what was ordered." *Goluba v. Sch. Dist. of Ripon*, 45 F.3d 1035, 1037 (7th Cir. 1995). Plaintiffs must show that the violation was not merely "technical," "trivial," or "inadvertent." *Cox v. Zale Del., Inc.*, 239 F.3d 910, 915 (7th Cir. 2001); *Haskins v. Stanton*, 794 F.2d 1273, 1277 (7th Cir. 1986).

**B.    Discussion**

Plaintiffs argue that Defendants did not comply with either injunction order. There is no contention that the Court's injunction was ambiguous. But, as explained below, because Plaintiffs fail to show by clear and convincing evidence that Defendants have violated both orders, Plaintiffs' motion to enforce injunction orders (Dkt. 237) is denied.

*1.    The Injunction Order Was Unambiguous.*

The parties do not dispute that the injunction was unambiguous. (*See generally* Dkts. 238; 249.) On March 26, 2019, the court commanded Defendants to "restore the *status quo ante* by (1) reinstating the healthcare benefits that were in effect before

January 1, 2016 under the 2002 [Plan] . . . , and (2) notifying in writing each covered retiree and surviving spouse that the healthcare benefits will be restored . . . ." (Dkt. 64.) After the Seventh Circuit reinstated the injunction, it authorized the Court " 'to take appropriate steps to oversee and implement' the injunction." (Dkt. 108 at 1.) Under that authority, the Court ordered Defendants to (1) restore healthcare benefits to the retirees and their eligible dependents no later than January 1, 2020; (2) give each retiree a reasonable opportunity to enroll; (3) distribute enrollment materials in November 2019; and (4) provide retirees with details of the restored healthcare and provide Plaintiffs' counsel with reports detailing their efforts to comply with the order. (*Id.*)

### 2. *Defendants Did Not Violate the Injunction Order.*

Plaintiffs argue that Defendants "have done none of the[] things" required by the injunction. (Dkt. 238 at 6.) According to Plaintiffs, the 2020 Plan does not restore, reinstate, or replicate the 2002 Plan. (*Id.*) More specifically, Plaintiffs allege that the 2020 Plan has different administrators, coverages, networks of doctors and healthcare providers, prescription program, and co-premium cost structure. (*Id.*) Plaintiffs also contend that the enrollment process was inadequate, with "murky, confusing, ill-timed" communications that discouraged retiree participation. (*Id.*) Plaintiffs also allege that the reports sent to Plaintiffs' counsel were "few," "reactive," and "sparse." (*Id.*) Plaintiffs state that as a result of the "deficient" 2020 Plan, only 30% of eligible retirees participate in that Plan, depriving the remaining 70% of "all

contractual entitlements." (*Id.*) Plaintiffs allege that Defendants are now unjustly profiting at the expense of the retirees. (*Id.*)

Defendants counter that Plaintiffs "fall far short of meeting their burden" to show by clear and convincing evidence that Defendants have violated the injunction. (Dkt. 249 at 14.) According to Defendants, they "engaged in a thorough process aimed at replicating . . . the terminated plan," and Plaintiffs' complaints about the 2020 Plan are "vague, unsupported, inaccurate, irrelevant, and ignore what the injunction requires." (*Id.*) Defendants maintain that they have "substantially complied and taken reasonable and diligent steps to comply with this Court's injunction order." (*Id.*)

*(a)     Restoration of healthcare benefits.*

Plaintiffs first find fault with the administrator of the 2020 Plan. The 2002 Plan was administered by Blue Cross Blue Shield of Illinois ("BCBS"). (Dkts. 238 at 13; 238-1 at 9.) But the 2020 Plan is administered by UMR, AP Benefit Advisors, United Healthcare Choice Plus Network, and OptumRx. (Dkt. 238 at 13.) Plaintiffs argue that due to the change in administration, fewer coverages and programs are provided to the retirees, particularly the Blue Card program.[1] (*Id.* at 13–14.) The 2020 Plan also, according to Plaintiffs, has new and different doctor, hospital, and pharmacy networks; caps air ambulance coverage and chiropractic visits; and limits skilled nursing and post-cataract surgery benefits. (*Id.* at 14.) Plaintiffs point out

---

[1] The Blue Card program is a service run by BCBS that permitted retiree-families to obtain healthcare services while traveling or living in states other than Illinois. (Dkt. 238 at 13.) This benefit was especially important because the retirees lived across thirteen states. (*Id.*)

another "material difference" in the premiums paid by retirees. Plaintiffs argue that, even though the CBA requires premiums to be 20% of cost plans set by rates confirmed by an actuary, the 2020 Plan is set by unsuitable assumptions calculated using a software called "Claros." (*Id.* at 14–15.) Plaintiffs contend that these changes were understood by the retirees as significant and material—not a return to the status quo of the 2002 Plan. (*Id.*)

As Defendants argue, however, neither the CBA nor the injunction require BCBS to be the administrator of the Plans. (*See* Dkt. 249 at 14.) The CBA specifies that the Plans should be administered by arrangements provided by Acme, and the Court's injunction requires reinstatement of the healthcare benefits. (*See* Dkts. 64; 238-1 at 2.) Defendants also provide evidence that they attempted to secure BCBS coverage for the 2020 Plan, but BCBS declined to provide a quote. (*See* Dkt. 249-7.) Accordingly, it was not inappropriate for Defendants to secure healthcare coverage through an administrator other than BCBS so long as the healthcare benefits provided by that new administrator were reinstated.

Plaintiffs have failed to show by clear and convincing evidence that the chosen administrator of the 2020 Plan (UMR) does not reinstate the 2002 Plan's healthcare benefits. Most if not all of the differences between the Plans that Plaintiffs point to are supported almost exclusively by the now-excluded Wohl Report. Plaintiffs do not provide any additional evidence or citations to support their claim that UMR administration provides inferior doctor, hospital, and pharmacy networks and limits other benefits (*e.g.*, air ambulance, chiropractor, skilled nursing). Nor do Plaintiffs

15

cite the CBA to support their arguments about what coverage they allege is required. Plaintiffs' complaint about insufficient costs of the premiums suffers similarly: they provide no evidence beyond the Wohl Report to substantiate their allegations that using the Claros software violates the CBA.

Conversely, Defendants present evidence that the 2020 Plan expands the available networks and benefits. (Dkts. 249 at 15–20; 249-1 ¶¶ 20–23.) For instance, the 2020 Plan now includes all in-network Medicare providers in addition to UMR's in-network providers, and its pharmacy network covers 93% of all available pharmacies. (Dkts. 249 at 15–16; 249-1 ¶ 23; 249-14.) Defendants also cite evidence that when UMR discovered a discrepancy in post-cataract surgery benefits between the Plans, it acted quickly to correct that discrepancy before it negatively affected any of the retirees. (Dkts. 249-1 ¶¶ 33–36; 249-3 at 15; 249-8 at 28.)

Based on the foregoing, Plaintiffs have not shown by clear and convincing evidence that Defendants have violated the Court's injunction ordering them to reinstate the 2002 Plan healthcare benefits. (*See* Dkt. 64.) Plaintiffs advance a long list of complaints but provide little evidence other than the now-excluded Wohl Report to support those allegations. In contrast, Defendants have provided enough evidence to show that they have substantially complied with the injunction requiring them to reinstate the healthcare benefits in effect under the 2002 Plan. At a minimum, Defendants have shown they have been reasonably diligent in attempting to comply with the Court's order, and any discrepancy Plaintiffs point out is either minor or has been rectified by Defendants. As a result, the Court cannot find that Defendants have

16

violated the order to reinstate the healthcare benefits in effect under the 2002 Plan. *See Prima Tek II*, 525 F.3d at 541–43; *Goluba*, 45 F.3d at 1039–40 (denying motion for civil contempt because there was insufficient evidence to find that the defendants deliberately violated the court's order); *Oberloah v. Eclips Hair Design, Inc.*, No. 10-CV-497, 2015 WL 1064609, at *6 (N.D. Ind. Mar. 11, 2015) (civil contempt inappropriate because the plaintiffs provided insufficient support to substantiate their allegations, and the defendants provided evidence that they substantially complied with the court's order).

### (b)  *Notification that healthcare benefits will be restored.*

Plaintiffs next argue that Defendants have not fulfilled their second injunction obligation to notify each retiree in writing that healthcare benefits will be restored. (Dkts. 238 at 15–21; 64.) Plaintiffs argue that the communications Defendants sent to the retirees throughout the restoration process were "murky" and confusing and contained inadequate information. (Dkt. 238 at 15–21.) Plaintiffs state that the communications were also "ill-timed" and "did not permit informed assessment of [Defendants'] 'new plan.' " (*Id.* at 17.) Plaintiffs argue that these deficiencies caused "distrust and disenfranchisement" among the retirees. (*Id.* at 18.)

But throughout Plaintiffs' complaints about the alleged insufficiencies of the communications, nowhere do they argue that Defendants violated the injunction's order to notify in writing that the healthcare benefits would be restored. In fact, Plaintiffs explicitly detail many of the mailings Defendants sent to the retirees. (*Id.* at 16–18; *see* Dkts. 238-15 – 238-20.) These communications, however "murky" and

confusing they purportedly may be, are nevertheless communications sent by Defendants in conformity with the Court's injunction orders. Plaintiffs thus cannot show by clear and convincing evidence that Defendants have violated their Court order to notify the retirees in writing that their healthcare benefits will be restored. Accordingly, for the reasons stated above, Plaintiffs' motion to enforce injunction orders is denied.

## IV. Motion for Disgorgement and Restitution, Restoration of Promised Healthcare, and Court-Appointed Neutrals

Plaintiffs also seek various equitable remedies to address "the past harms done, and to end the ongoing harms being done" by Defendants against the retirees. (Dkt. 235.) Plaintiffs argue that Defendants were unjustly enriched by "saved expenditures," "consequential gains," and "use value" since 2016 when they unlawfully terminated Plaintiffs' healthcare benefits and continue to be unjustly enriched due to the "deficient" 2020 Plan. (Dkt. 236 at 9.) For the reasons stated below, Plaintiffs' motion for various equitable remedies (Dkt. 235) is denied.

### A. Legal Standard

Section 502 of the Employee Retirement Income Security Act (ERISA) authorizes a participant or beneficiary of a healthcare benefits plan to bring a civil action for various purposes and defines the available remedies. *See* 29 U.S.C. § 1132. Section 502 has been described as a "carefully crafted and detailed enforcement scheme" that does not authorize any remedies that it does not expressly incorporate. *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002). Section 502(a)(1)(B) first permits a beneficiary or participant to bring an action to "recover

benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Section 502(a)(3) then permits an action to "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan" or to "obtain other appropriate equitable relief (i) to redress such violations or (ii) enforce any provisions of this subchapter or the terms of the plan." *Id.* § 1132(a)(3)(A)–(B). Section 502(a)(3) is commonly referred to as a "catchall provision" that provides "appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Clapper v. United Airlines, Inc.*, No. 20 CV 2635, 2021 WL 260232, at *6 (N.D. Ill. Jan. 26, 2021) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)). This means that if § 502 provides a remedy for a claim elsewhere, the § 502(a)(3) "catchall" provision is not available. *See id.*; *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009) (if relief is available to a plaintiff under § 502(a)(1)(B), then relief is not available under § 502(a)(3); *Peabody v. Davis*, 636 F.3d 368, 373 (7th Cir. 2011).

    **B.   Discussion**

        *1.   Disgorgement and Restitution.*

Plaintiffs ask the Court to direct Defendants to disgorge gains they realized since the 2002 Plan was terminated in 2016, and ongoing gains they continue to receive under the 2020 Plan. (Dkt. 236 at 9.) Plaintiffs also request that the Court direct Defendants to replace the 2020 Plan with a "better alternative [that] . . . can provide comparable or better healthcare at lower cost." (*Id.*) Plaintiffs argue that the

19

Court may "fashion" such equitable relief under §§ 1132(a)(1)(B) and (a)(3) of Section 502; in making this argument, Plaintiffs rely heavily on the Restatement (Third) of Restitution and Unjust Enrichment, as well as various legal and policy considerations. (*See id.* at 10–11; 15–41.) Defendants counter that courts have repeatedly held that Section 502 prohibits the "extracontractual" equitable remedies Plaintiffs seek. (*See generally* Dkt. 248.)

Both the Supreme Court and the Seventh Circuit have held that §§ 502(a)(1)(B) and (a)(3) do not explicitly say anything about the recovery of extracontractual damages; thus, those damages are prohibited. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985); *Harsch v. Eisenberg*, 956 F.2d 651, 654–61 (7th Cir. 1992). *Harsch* barred plaintiffs from recovering extracontractual compensatory and punitive damages because of a "complete absence in section 502(a) of any mention of extracontractual damages." 956 F.2d at 655. To find otherwise would "do some violence to the language of section 502(a)(1)(B)." *Id. Harsch* also interpreted Section 502(a)(1)(B) to "limit beneficiaries to *contractual* claims by providing only for actions based upon or arising 'under the terms of the plan.' " *Id.*

Plaintiffs are seeking disgorgement and restitution of "consequential gains," "saved expenditures," and "use value" from Defendants. (*See* Dkt. 235.) Plaintiffs in essence argue that they are entitled to the monetary gains Defendants allegedly earned when they implemented the 2020 Plan. They contend that mere compensatory damages are insufficient to compensate the retirees and too difficult to calculate, so they are entitled to such disgorgement and restitution. But Plaintiffs do not cite to

the CBA, nor do they cite caselaw, supporting this Court's authority to award them that relief under § 502(a)(1)(B). They instead rely on the Court's inherent power to "fashion" adequate remedies for past and ongoing harms as a matter of good policy. Section 502(a)(1)(B) only permits the Court to award contractual remedies "under the terms of [the] plan." 29 U.S.C. § 1132(a)(1)(B). This is not what Plaintiffs are requesting; instead, they seek extracontractual damages that do not arise under the terms of the CBA. Accordingly, the Court cannot award the requested remedies under Section 502(a)(1)(B).

Nor can the Court award such remedies under its authority in Section 502(a)(3). Plaintiffs may still recover "make-whole damages," which amounts to the benefits Plaintiffs claim Defendants wrongly withheld, plus interest Defendants earned on those benefits. *See Andujar v. Sun Life Assurance Co. of Can.*, No. 14 C 2792, 2014 WL 4099800, at *4 (N.D. Ill. Aug. 20, 2014). And the parties do not dispute that these contractual compensatory damages are still available under Section 502(a)(1)(B). Plaintiffs agree that they may recover "funds they demonstrate they paid healthcare between January 1, 2016 to December 31, 2019 above what their healthcare would have cost had [Defendants] not cancelled their coverage in 2016." (Dkt. 236 at 26.) Plaintiffs contend that these compensatory damages would be too difficult to calculate and would not fully compensate the retirees. (*Id.*) But regardless of the adequacy of compensatory damages, they remain available to Plaintiffs. Accordingly, because compensatory relief is available under Section 502(a)(1)(B), equitable remedies under Section 502(a)(3) are not available. *See Mondry*, 557 F.3d

781; *Clapper*, 2021 WL 260232 at *6. Plaintiffs' request for disgorgement and restitution is denied.

### 2. *Restoration of the Promised Healthcare.*

Plaintiffs also request that the Court direct Defendants to either fix the 2020 Plan or replace it with a better alternative that they argue would truly restore the status quo. (Dkt. 236 at 9.) Relying extensively on the Wohl Report, Plaintiffs argue that there are several better alternatives to the 2020 Plan, which, if implemented, would adequately remedy the retirees. (*Id.* at 38–46.) But the Court has excluded the Wohl Report as unreliable and cannot rely on Plaintiffs' arguments that are supported by the Report. Additionally, Plaintiffs' request largely appears to be a restatement of the arguments put forward in their motion to enforce the Court's injunction order, which the Court has now denied because Plaintiffs failed to show Defendants violated the order. Accordingly, the Court denies Plaintiffs' request for restoration of the promised healthcare.

### 3. *Court-Appointed Neutrals.*

Finally, Plaintiffs request appointment of a special master to help the Court (1) design remedies; (2) reform the 2020 Plan; (3) assist retirees in participating in any reformed plan that gets implemented; (4) communicate to retirees; and (5) fashion other remedies. (Dkt. 236 at 48.) Rule 53 of the Federal Rules of Civil Procedure permits a court to appoint a master to:

> (A) perform duties consented to by the parties; (B) hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by: (i) some exceptional condition; or (ii) the need to perform an accounting or resolve a difficult computation

of damages; or (C) address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district.

Fed. R. Civ. P. 53(a)(1).

Other than stating that "the Court would benefit from others' pertinent expertise," Plaintiffs do not explain which purpose stated in Rule 53 a special master might serve in this case. (Dkt. 236 at 47.) Nor does the Court find that this action requires a special master. Accordingly, Plaintiffs' request for the appointment of a special master is denied.

## V.    CONCLUSION

For the reasons stated above, Defendants' Motion to Exclude the Report and Testimony of Stuart I. Wohl (Dkt. 245) is granted; Plaintiffs' Motion to Enforce the Court's Injunction (Dkt. 237) is denied; and Plaintiffs' Motion for Disgorgement and Restitution, Restoration of Promised Healthcare, and Court-Appointed Neutrals is denied.

SO ORDERED in No. 17-cv-05360.

Date: September 30, 2024

JOHN F. KNESS
United States District Judge