UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HAROLD STONE and JOHN WOESTMAN,
for themselves and others similarly-situated, and
UNITED STEEL, PAPER AND FORESTRY,
RUBBER, MANUFACTURING, ENERGY,
ALLIED INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL
UNION, AFL-CIO-CLC,

    Plaintiffs,

v.

SIGNODE INDUSTRIAL GROUP, LLC and
ILLINOIS TOOL WORKS, INC., jointly and severally,

    Defendants.

Case No. 17-cv-5360
Class Action

U.S. District Judge John F. Kness

## BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF DENIAL OF RETIREES' MOTION TO ENFORCE THE INJUNCTION REQUIRING RESTORATION OF PROMISED BCBS BENEFITS

John G. Adam
Law Office of John G. Adam, PLLC
3950 W. 11 Mile Road
Berkley, MI 48072
Royal Oak, MI 48067
248-227-9898
jgabrieladam@gmail.com

Stephen Yokich
Dowd, Bloch, Bennett, Cervone,
 Auerbach & Yokich
8 S. Michigan Ave., 19th Floor
Chicago, IL 60603
312-372-1361
syokich@laboradvocates.com

Stuart M. Israel
Stuart M. Israel, PLLC
28857 Still Valley
Farmington Hills, MI 48334
248-990-0980
smi@smisrael.com

Class Counsel and Attorneys For Plaintiffs

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................................................. 1

I. THE 2002 CBA PROMISES BCBS BENEFITS BY NAME ........................................... 2

II. THE DENIAL APPLIES AN ERRONEOUS PROOF BURDEN .................................... 3

III. THE DENIAL MISREADS THE "EVIDENCE" ............................................................. 4

CONCLUSION .............................................................................................................................. 7

i

Pursuant to Fed. R. Civ. P. 7(b)(1), the retirees and the union ask the Court to reconsider the denial (R270) of their motion to enforce (R237) the permanent injunction (R64, PgID 1042).

The injunction orders restoration of the *status quo ante*, *i.e.*, reinstatement of the Blue Cross Blue Shield of Illinois and Blue Card benefits promised in the 2002 CBA and in force from January 1, 2002 until defendants wrongfully discontinued those benefits on January 1, 2016. We ask that the Court order defendants ITW and Signode to restore the promised BCBS benefits.

## ARGUMENT

The decision denying enforcement (R 270) is based on three manifest legal errors.

*First*, the denial misreads the 2002 Pensioners' and Surviving Spouses' Health Insurance Agreement (the "CBA"). The 2002 CBA *promised* BCBS benefits *by name*. Defendants wrongfully-cancelled the BCBS benefits after 2015. The 2019 injunction orders defendants to restore "the healthcare benefits that were in effect before January 1, 2016"—*i.e.,* the BCBS benefits—but defendants have not done so. **(Argument I).**

*Second*, the denial applies an incorrect legal standard. Defendants must show their full compliance with the injunction; it is not the retirees' burden to show defendants' non-compliance. The Court recognized this at the 2019 "show cause hearing" which put the burden to show compliance on ITW and Signode. **(Argument II).**

*Third,* the denial erroneously relies on defendants' ungrounded assertions of diligence and that restoration of the promised BCBS benefits was impossible in 2020. ITW and Signode present **(1)** no evidence of requisite diligence, **(2)** no evidence of impossibility, and **(3)** no justification for their failure to seek judicial directions on CBA and injunction compliance when they unilaterally decided that full-compliance was unnecessary and impossible. **(Argument III).**

## I. THE 2002 CBA PROMISES BCBS BENEFITS BY NAME

The BCBS of Illinois benefits in effect under earlier CBAs were continued by the 2002 CBA, which added BCBS's national Blue Card program *by name*. The 2002 CBA promised to "Expand the network through Blue Cross Blue Shield's Blue Card Program (entire USA)..." (R238-1, Appx. APC-3, ¶7, PgID 3249).

The national Blue Card program facilitated the retirees' use of BCBS benefits outside Illinois. (R254-3). This was important to the retirees who, after retirement from the Illinois plant, reside in 13 states. (R270, PgID 3990, note 3, citing R238 at 13). The parties negotiated the Blue Card program in 2002. Acme *agreed* to add the Blue Card program in return for union agreement to reductions in company healthcare expense. The tradeoffs included increased retiree-paid deductibles and co-insurance and doubling retiree-paid monthly contributions, from 10% to 20%. (See R238-1, APC-3, ¶¶1-6, 8, 10, and 12, PgID 3249-3250). The modified BCBS benefits became effective on January 1, 2002. (*Id*., preamble, PgID 3249).

The 2002 CBA *promises* the BCBS benefits *by name,* but the enforcement-denial adopts defendants' legally-erroneous argument that "neither the CBA nor the injunction require BCBS to be the administrator of the Plans." (R270, PgID 3991, citing R249 at 14).

The denial invoked the 1994 CBA (R270, PgID 3991, citing R238-1, PgID 3242) as requiring benefits "administered by arrangements provided by Acme," suggesting that continuation of the BCBS benefits was subject to Acme's discretion. This was an error of law. The 2002 CBA *explicitly* promised the "Blue Cross Blue Shield's Blue Card Program." (R238-1, ¶7, PgID 3249-3250). *Only* BCBS plans include Blue Card coverage. (See R254-3). A Latin legal maxim might put it: *expressio* BCBS *est exclusio* non-BCBS.

2

Acme, ITW, and Signode provided the CBA-promised BCBS benefits through 2015. They wrongfully ended the benefits in 2016. The retirees sued. In 2019, this Court ordered ITW and Signode to retore "the healthcare benefits that were in effect before January 1, 2016"—*i.e.,* the BCBS benefits. But, in 2020, ITW and Signode unilaterally-implemented their non-BCBS plan.

The denial concluded it was "not inappropriate" for ITW and Signode to use "an administrator *other than* BCBS"—R270, PgID 3991 (emphasis added)—but defendants' unilateral implementation of non-BCBS benefits breaches the 2002 CBA and violates the injunction.

## II. THE DENIAL APPLIES AN ERRONEOUS PROOF BURDEN

The denial concludes that the retirees "have not shown by clear and convincing evidence" that ITW and Signode "violated the injunction ordering them to reinstate the 2002 Plan." (R270, PgID 3992, citing R64). This erroneously applies the burden for seeking civil contempt (not sought by the retirees' motion) and erroneously relieves ITW and Signode of their CBA obligations and their responsibility to show diligent full-compliance with the injunction.

See, *e.g.* (internal citations and quotation-marks omitted): **(1)** *Goluba v. School Dist.*, 45 F.3d 1035, 1037 (7th Cir. 1995) (ordered-party must show it is "reasonably diligent and energetic in attempting to accomplish what was ordered"); **(2)** *Prima Tek v. Klerk's Plastic*, 525 F.3d 533, 542 (7th Cir. 2008) (ordered-party must "take steps to reasonably and diligently comply with the order"); **(3)** *American Fletcher v. Bass*, 688 F.2d 513, 516-518 (7th Cir. 1982) (rejecting ordered-party's "half-hearted" and "feeble" efforts and cosmetic "paper compliance"; a party claiming impossibility to comply as ordered must "prove" its "serious" efforts and petition the court "for directions" on "how" to alternatively comply); and **(4)** *International Star Registry v. SLA Group*, 325 F.Supp.2d 879, 884-885 (N.D. Ill. 2004) (ordered-party's "attempt to pass" its compliance responsibilities to plaintiff or delegate them to others "demonstrates a clear lack of diligence";

3

ordered-party's failure to promptly correct non-compliance "indicates at best a woeful lack of diligence and at worst, an intent to continue to reap benefits" from non-compliance).

Here, ITW and Signode have the burden to "prove" and "show" *either* **(1)** their full compliance with the injunction *or* **(2)** that full-compliance is impossible despite their "diligent" and "serious" efforts to fully-comply. *And* **(3)**, if ITW and Signode believe that full-compliance is impossible, they have the responsibility to ask the Court "for directions" on alternative compliance. Employer "faithful performance" of CBA-promises is the foundation of federal labor law. See *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 454 (1971).

At the 2019 "show cause hearing" (R90, PgID 1221*ff*), this Court properly required ITW and Signode to show their compliance-efforts and account for their non-compliance. The "clear and convincing" burden that the denial now places on the retirees nullifies the CBA-promise of BCBS benefits and is contrary to the law *and* to the law of the case.

### III. THE DENIAL MISREADS THE "EVIDENCE"

The denial remarks that ITW and Signode "also provide evidence that they attempted to secure BCBS coverage for the 2020 plan, but BCBS declined to provide a quote." (R270, PgID 3991, citing R249-7). The denial concludes this is "enough" to show that ITW and Signode "substantially complied with the injunction requiring them to reinstate the healthcare benefits in effect under the 2002 plan." (R270 PgID 3991-3992). This misreads the record and the 2002 CBA and erroneously credits defendants' foundation-bereft assertion and inadmissible "evidence."

***First***, the 2020 non-BCBS plan is *not* compliant, substantially or otherwise. It does *not* provide the familiar, retiree-friendly BCBS benefits *negotiated by name* into the 2002 CBA. As retirees attest, the non-BCBS plan—complexly administered by UMR, United Healthcare ChoicePlus Network, OptimumRx, and AP Benefits Advisors—is materially different and

4

confusing, and *not* the BCBS plan that the retirees bargained-for, were promised in 2002, and had through 2015. (R238-26, 238-27, 238-28, 238-29, and 238-30). In short, the 2020 plan *does not restore* the "healthcare benefits that were in effect before January 1, 2016," *i.e.,* the BCBS benefits.

***Second,*** there is no evidence that ITW or Signode even asked BCBS to restore the promised BCBS benefits, much less that BCBS "declined to provide a quote."

The referenced "evidence" comes from Susan Furlan, the Signode official responsible for the 2020 non-BCBS plan. Furlan *understood* that BCBS "declined" to "bid" on restoration of the cancelled benefits, but her *understanding* is second-hand and inadequately-based on a cryptic email responding to an *unidentified* third-party's *unspecified* inquiry. (R249-7, PgID 3682). In fact, the email evidences that BCBS *did not decline* to "provide a quote." The two-sentence email *twice* says that some earlier email was "*not a DTQ*"—not a "decline to quote." The email also suggests that BCBS was interested in presenting a "bid" on restoring the benefits for "all lives, as was the case previously," *i.e.,* before 2016. (R249-7, PgID 3682, emphasis added).

In short, BCBS never "declined to provide a quote." In addition, there is no record-evidence of what BCBS would do if asked to restore the 2015 benefits or comparable benefits—through ITW's existing employees and retirees BCBS plan (see R238-4), *or* the union's employer-funded BCBS retiree plan (see R238-22), *or* a comparable BCBS plan. Further, there is no record-evidence of any "serious" ITW or Signode effort to even *try* to restore the BCBS benefits. To the contrary, the record shows defendants' indiligence and indifference, on display in Furlan's testimony at the "show cause hearing" (R90):

  **Q.** [Class counsel] …as of December 2015, who was the claims administrator for the retirees, the Acme retirees?

  **A.** [**Furlan**] It was Blue Cross Blue Shield. (R90, PgID 1338-1339).
  \*\*\*

5

> Q. …since the injunction was issued, you have made no attempt to contact Blue Cross Blue Shield of Illinois, correct?
>
> A. That's correct.
>
> \*\*\*
>
> Q. …what discussions did you have with Illinois Tool Works about restoring the health care benefits?
>
> A. None.
>
> Q. Well, you must have talked to somebody at ITW about the health care coverage, the benefits. Did you talk to anybody at ITW?
>
> A. No, I did not.
>
> Q. Are you aware of any discussion between Signode and ITW about compliance with Judge Durkin's injunction?
>
> A. I have no knowledge of that.
>
> \*\*\*
>
> Q. Do you know that ITW currently has an ongoing relationship with Blue Cross Blue Shield of Illinois covering tens of thousands of employees and retirees? Do you know that?
>
> A. I have no idea what ITW benefits are. (PgID 1339-1340).
>
> \*\*\*
>
> Q. Did you look at Judge Durkin's injunction?
> A. No, I did not. (PgID 1342).

Defendants argue it is impossible to restore the BCBS benefits because BCBS "declined" interest, though the evidence refutes this. But even if Signode and ITW believed it was impossible to restore the pre-2016 BCBS benefits in 2020, they should—in the Seventh Circuit's words—"have petitioned the court for directions on how to comply with the order." *Bass*, 688 F.2d at 518. But ITW and Signode bypassed the Court and did not try to achieve even "substantial

compliance"—through the existing ITW BCBS plan, or the employer-funded union-retiree group BCBS plan, or a comparable BCBS plan subject to Court-authorization, Rule 23(c) notice, union "accord and satisfaction," and retiree-input. Instead, ITW and Signode unilaterally disregard their CBA promise and their injunction obligations to retore the wrongfully-cancelled BCBS benefits in effect from 2002 through 2015.

The enforcement-denial *erroneously* relies on *refuted assertions* of ITW and Signode "diligence" and the supposed "impossibility" of restoring the promised BCBS benefits.

## CONCLUSION

The injunction-enforcement denial decision is marred by three legal errors.

*First,* the denial misreads the 2002 CBA, which *promises* BCBS benefits *by name*, and does *not* permit ITW's and Signode's unilaterally-imposed *non-BCBS* substitute.

*Second,* the denial puts the burden on the retirees, but the law and the law of the case require ITW and Signode to "show cause" for their non-compliance.

*Third,* the denial adopts defendants' substantial-compliance and impossibility excuses, but defendants' *non-BCBS* plan is not injunction-compliant, and defendants cannot show that **(1)** they diligently tried to achieve full-compliance with their CBA and injunction obligations to provide BCBS benefits, *or* **(2)** restoration of the promised BCBS benefits is impossible, *or* **(3)** they asked the Court "for directions" on CBA and injunction compliance when they unilaterally decided it was unnecessary and impossible to achieve even substantial compliance with their obligations to provide the promised BCBS benefits.

Instead of seeking judicial "directions," ITW and Signode unilaterally-imposed their 2020 non-BCBS plan, even though the 2002 CBA *promises* BCBS benefits *by name*. ITW and Signode unjustifiably do so to their multi-million-dollar advantage (see R238-3 through 238-15) and in breach of the 2002 CBA and the injunction.

ITW and Signode continue to profit from the expense-reductions negotiated in the 2002 CBA, but unilaterally deny the retirees' their *quid pro quo*, *i.e.*, the promised BCBS benefits. The deleterious impact of defendants' breaches is demonstrated in retiree declarations (R238-25 through R238-30) and by the numbers: 100% of the retirees are being denied the CBA-promised BCBS benefits; and because of ITW's and Signode's breaches, only 30% of class members participate in Signode's non-BCBS plan and 70% of class members are being denied all CBA-promised retirement healthcare benefits (see R238-11).

We ask the Court to direct ITW and Signode to restore the *status quo ante* as ordered and to provide the BCBS benefits promised by name in the 2002 CBA.

/s John G. Adam
Law Office of John G. Adam, PLLC
3950 W. 11 Mile Road
Berkley, MI 48072
Royal Oak, MI 48067
248-227-9898
jgabrieladam@gmail.com

Stephen Yokich
Dowd, Bloch, Bennett, Cervone,
 Auerbach & Yokich
8 S. Michigan Ave., 19th Floor
Chicago, IL 60603
312-372-1361
syokich@laboradvocates.com

Stuart M. Israel
Stuart M. Israel, PLLC
28857 Still Valley
Farmington Hills, MI 48334
248-990-0980
smi@smisrael.com

Class Counsel and Attorneys
For Plaintiffs

October 7, 2024

8